# Louisville & Nashville R. R. Co. *v.* Carter.

## Injury to Servant.

(Decided December 16, 1915.   70 South. 655.)

1. **Master and Servant; Injury to Servant; Federal and State Statutes; Inconsistent Position.**—The Federal Employers' Liability Act supersedes a state enactment in the same field and governs exclusively all cases falling within its scope, and an employee injured under such circumstances as renders his claim for damages properly brought under the Federal statute, cannot properly recover therefor under counts declaring on the state statute; hence, a defendant was entitled to affirmative instructions with respect to counts framed under the state statute if the evidence showed that the employe was engaged in interstate commerce at the time of the injury, notwithstanding such defendant had requested general affirmative instructions as to a count based on the Federal statute on the ground that plaintiff was not engaged in interstate commerce when injured.

2. **Commerce; Interstate; Engaged in.**—A railroad employee injured while assisting to repair a locomotive which was being used or was to be used wholly within the state of Alabama, in drawing a work train engaged in repairing the railroad's interstate track, was not within the Federal Employers' Liability Act, and was therefore entitled to bring his action under the state statute; the Federal Act being applicable only to those in the employment of interstate carrier who, at the time of the injury, are engaged in work immediately relating and directly contributory to interstate commerce, and not to secondary relations to an interstate instrumentality.

3. **Same.**—The purpose to devote in future an agency capable of use in interstate commerce to that service will not bring it within the operation of the Federal Employers' Liability Act, though the physical preparation of the agency for immediate use in such commerce may be sufficient.

4. **Master and Servant; Injury to Servant; Exercising Superintendence.**—Where the evidence showed that B., a mechanic, was sent to a certain place to repair a locomotive and that plaintiff was sent by his foreman to help B. work on the engine, and that his duties did not include work of this character, but required his service about a coal chute and in the transfer of baggage and that B. directed plaintiff to do certain things connected with the repair of the engine, such evidence did not make a prima facie case of superintendence of B. as that word is used in the statute; superintendence is the creature of power or authority conferred by the master, and though there are positions in a master's service naturally importing the character of superintendence reposed in the servant in their position, the service or station of B. was not of that type.

5. **Same; Jury Question.**—Under the facts in this case, it was a question for the jury whether plaintiff was entitled to recover under subdivision 3, § 3910, Code 1907.

6. **Damages; Personal Injury.**—Where the action was for injuries to plaintiff's left eye, evidence as to the condition of his right eye subsequent to the injury was admissible, since, if the right eye was diseased or affected,

[Louisville & Nashville R. R. Co. v. Carter.]

the consequences following injury to or complete loss of his left eye would be more grave and damnifying, or if the diseased or defective condition of the right was aggravated by the injury to or loss of the left eye, this also was a proper factor in ascertaining the damages.

7. **Evidence; Mortality Table.**—Mortality tables were admissible in an action for damages for the loss of an eye, in connection with evidence tending to show decreased earning capacity, on the question of probable life expectancy, the injury being permanent.

8. **Damages; Injuries; Instruction.**—Where the action was for damages for the loss of an eye, an instruction that if the jury were reasonably satisfied from the evidence that plaintiff was permanently injured, then he was entitled to recover such a sum as the evidence reasonably satisfies the jury that his earning capacity had been decreased, as placed at interest at 8% per annum, will, by taking a part of the principal and all of the interest each year at the end of his life expectancy as shown by the American mortality tables, leave nothing, was erroneous, as the rule that the court was attempting to state is applicable only to cases of death, and the measure of damages for permanent injury not resulting in death is compensation for the disabling effect of the injury, past and prospective, including damages for loss of time, and the incapacity to do as profitable labor before the injury, together with such phyical and mental suffering as may be reasonably shown.

9. **Appeal and Error; Harmless Error; Instruction.**—As such an instruction gave a totally inapplicable measure or rule of damage, it was prejudicial to defendant's substantial right, and cannot be held harmless.

(Gardner, J., dissents in part.)

APPEAL from Escambia Circuit Court.

Heard before Hon. A. E. GAMBLE.

Action by Frank Carter against the Louisville & Nashville Railroad Company, for damages for personal injury sustained while in its employment. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

PAGE, McMILLIAN & BROOKS, for appellant. BOYLES & KOHN, and LEIGH & LEIGH, for appellee.

McCLELLAN, J.—The plaintiff (appellant) was permanently injured in consequence of being hit in the left eye by a piece of metal that was chipped off of a steel or iron bar with a cold chisel and a hammer in the hands of one Baumgartner, then in the service of appellee in the repair of the grate bars in a locomotive. The action is to recover damages for this injury.

(1) Count 8 of the complaint as amended sought to fasten liability on the company under the federal Employers' Liability Act. The general affirmative charge as to count 8 was given the jury, at defendant's request, and evidently upon the theory that

[Louisville & Nashville R. R. Co. v. Carter.]

at the time the plaintiff was injured he was not engaged in interstate commerce. But for the consideration to be stated, this court would be disposed to thus respond to the appellant: Having moved the court to such a conclusion, and invoked the jury's instruction against the right to recover as upon the theory that the plaintiff was injured while serving in the promotion of interstate commerce the defendant cannot be heard to urge error because of the refusal of instructions against the plaintiff's right to recover under counts 14 and 15, drawn under the state Employers' Liability Act, upon the inconsistent theory that he was injured while engaged in service within the influence of the federal Employers' Liability Act.—*L. & N. R. R. Co. v. Holland,* 173 Ala. 657, 697, 55 South. 1001; *Clarke v. Dunn,* 161 Ala. 633, 639, 50 South. 93; *Shelton's Case,* 73 Ala. 5; *Leonard's Case,* 66 Ala. 461. But the consideration before mentioned forbids recourse to the wholesome rule just restated, and for these reasons: The federal Employers' Liability Act supersedes a state enactment in that field and governs exclusively all cases falling within its influence (*Ex parte Atl. Coast Line R. Co.,* 190 Ala. 132, 67 South. 256) ; and, if an employee is injured under circumstances subjecting his claim for damages to the control of the exclusive authority of the federal enactment, he cannot properly recover therefor on a count or counts declaring as for liability under the state Employers' Liability Act (*Ex parte Atl. Coast Line R. Co., supra*) ; and so, when the defendant here requested general affirmative instructions, in its favor, with respect to counts 14 and 15, drawn as they are to state a cause of action under the state Employers' Liability Act, it raised the inquiry, without regard to count 8, whether the plaintiff was, when injured, in the service of interstate commerce, and if, under the whole evidence, it undisputably appeared that he was in the interstate service when injury overtook him, the defendant would have been entitled to have the jury instructed against a recovery under the counts declaring on a liability that, without the intervention of the federal enactment, might have been available to him.

(2, 3) The plaintiff was engaged when injured in helping a machinist repair a locomotive of the defendant that had been more recently employed in the repair or employment of the main line of the defendant's railway, in this state, connecting Cincin-

nati, Ohio, and New Orleans, La.—a line that was used for the transportation of both intrastate and interstate commerce. The locomotive (No. 1244) undergoing the repair had very recently theretofore been regularly used in drawing between Mobile and Montgomery; in Alabama, a regular through interstate freight train that was made up at New Orleans and destined for Cincinnati. It became or was deficient for that service; and, when the locomotive and train reached Flomaton on the regular run, another locomotive was substituted to take the interstate train on north. The engine in question (No. 1244) was after its withdrawal from its accustomed service promptly put to the use of drawing cars in Alabama only, in a work train then engaged in filling a washout in the main interstate line of the defendant near Flomaton. It was desired to repair the grate or side bars of the engine; and the mechanic, Baumgartner, was brought from Mobile to make the repairs. The necessary materials to effect the repairs came at night when the engine was at rest from the work train service in which it had been used the day previous to that night and in which service it was continued the day succeeding the night during which the repairs were being made, when the plaintiff was injured.

The federal Employers' Liability Statute is only applicable or available to the employees it prescribes and defines, viz., those in the employment of interstate carriers who at the time of the injury are engaged in work or service immediately related, directly contributory to interstate commerce. Such relation exists not only when the injured employees service was in or about the act of transporting persons or things, but also when his service was in or about the maintenance or repair of agencies already devoted to or immediately capable of facilitating some essential feature of interstate commerce. The repair of a track over which interstate commerce is being, or is to be, moved in the usual course of the carrier's business is an instrumentality of such commerce; and an employee of an interstate carrier who is engaged, when injured, in a service immediately productive of the maintenance or repair of intimately connected and essential, indispensable features of interstate commerce is within, and his rights are governed by, the federal statute.—*Pederson v. D., L. & W. R. R.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Ruck v. C., M. & St. P. Ry. Co.*,

153 Wis. 158, 140 N. W. 1075, 33 Ann. Cas. 1914C, pages 164-168. The purpose to devote in future an agency capable of use in interstate commerce to that service will not meet the condition of the statute, though physical preparation of the agency for immediate use in such commerce may suffice to invoke the provisions of the statute.—*North Car. R. R. Co. v. Zachary,* 232 U. S. 248, 260, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. The work in which this plaintiff was engaged when injury befell him was in the repair of an engine not in such use in or about interstate commerce as to allow it to be characterized as an instrumentality of that commerce or to be regarded as an immediately or directly applied means to the maintenance or repair of any indispensable feature of interstate transportation. The fact that the locomotive under repair was to be used, or even was being used, in the repair of the interstate track only brought it into a secondary relation to an interstate instrumentality, viz., the track. The work being done by the plaintiff was for the repair of the engine, and not in the repair of the track. This vital circumstance readily distinguishes *Pederson v. D., L. & W. R., supra.* There the injured employee's service was one in immediate direct relation to the maintenance or repair of an instrumentality of interstate commerce, viz., the railway itself. Here the service being performed was upon an agency that was not so immediately related to interstate commerce as to justify its characterization as a part of the interstate service. The trial court expressed this view through its action in giving, at defendant's instance, the affirmative charge as to the eighth count. The plaintiff's right of action was under the state Employers' Liability Statute. Hence the defendant was not entitled to have a recovery forbidden as upon the counts (14 and 15) drawn to state a cause of action under the state statute, on the theory that the federal statute alone applied and governed the matter.

Through a recent deliverance made in response to writ of error procured by the railway company to the Supreme Court of Wisconsin (*C. & N. W. Ry. Co. v. Gray,* 237 U. S. 399, 35 Sup. Ct. 620, 59 L. Ed. 1018) the Supreme Court of the United States declined to express an opinion on the question whether or not the trial court should have found that the injured employee was engaged in interstate commerce, where the error, if any, did the appellant, railway company, no harm; the court affirming

that assumption of risk, under the Wisconsin law, is merely a case of contributory negligence. The Wisconsin law (Wisconsin St. 1913, § 1816, subd. 3) provides that: "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

This particular provision of the Wisconsin law is identical with the provision of the federal Employers' Liability Act relating to contributory negligence, and its effect upon the measure of a recovery. The identity of the two statutes was the basis —the sole basis—for the stated declination of the Supreme Court in *Gray's Case, supra,* to express an opinion in the premises. The pertinent laws of both sovereignties being the same, the defending carrier could not have been prejudiced in any substantial right in that instance. That cannot be said of the Alabama Employers' Liability Statute; for the Alabama law recognizes, accepts, and applies contributory negligence as a bar to a recovery for personal injuries, or for death from wrongful act or commission inflicted upon an employee.

(4) Count 14 was drawn to ascribe plaintiff's injury to the negligence of a superintendent, under subdivision 2 of our Liability Statute (Code, § 3910). In an action rested on that subdivision a plaintiff is obliged to show the existence of superintendence in the person he avers was a superintendent, and also that his injury was in consequence of negligence of the superintendent whilst in the exercise thereof. It is probable that the trial was had without particular regard to these important matters of averment in count 14. All the evidence tended to show was that Baumgartner was sent to Flomaton to repair the locomotive; that he entered upon the repair; that plaintiff was sent by his foreman, Franklin, to help Baumgartner work on the engine; and that plaintiff's duties did not include this character of work, but they required his service about the coal shute and the transfer of baggage at that point. Aside from the fact that Baumgartner did, in fact, direct plaintiff to do certain things connected with the repair of the engine, there is no evidence bearing upon the inquiries raised by the averments of count 14 touching the matter of superintendence. "Superintendence," under the second subdivision of our statute (section 3910), is the

creature of power or authority conferred by the master. That is what the term necessarily implies. Even though there may be, and doubtless are, positions in a master's service which naturally import a character of superintendence reposed in the employee serving in that position, the service or station to which the evidence assigns Baumgartner was not of that type. It was the plaintiff's obligation, if he would recover on his count 14, to adduce evidence disclosing the authority, the power, conferred (if so) by the master upon Baumgartner. The state of evidence now before us did not suffice to make out for the plaintiff even a prima facie case of Baumgartner's superintendency.—*Dantzier v. D. C. & I. Co.*, 101 Ala. 309, 14 South. 10, 22 L. R. A. 361; *Freeman v. S. S. S. & I. Co.*, 137 Ala. 48, 34 South. 612; 2 Lebatt, §§ 512, 678, 681; 1 Dresser's Employers' Liability, pp. 273, 274; 2 Dresser, etc., p. 135 et seq.

(5) Count 15 states a cause of action under subdivision 3 of our Employers' Liability Statute (Code, § 3910). It ascribes plaintiff's injury to a negligent order given by Baumgartner, his superior, to whose orders plaintiff was bound to conform, and did conform in that particular service. The pertinent circumstances shown by phases and tendencies of the conflicting evidence were these: Baumgartner was cutting off the end of a bar of metal to fit it into the appropriate place in the engine. He was using a hammer and a cold chisel. The bar was lying in the gangway of the engine. It was night, and a light was necessary. The plaintiff's directed part in the operation was to hold the bar steady by putting his foot on it, and to hold the light so Baumgartner could see to do his work. The process of cutting the bar threw off pieces of metal with some force. One piece struck plaintiff in his left eye while, as he testified, he was holding the light for his superior to work by and at the same time steadying the bar with his foot. There was evidence tending to show that the plaintiff could not hold the light as he was directed to do by Baumgartner without turning his face towards and into the line of flight of the pieces of metal thrown off by blows from the hammer on the applied chisel. The evidence bearing on the issues made by the averments of count 15, as well as those tendered by the special pleas thereto, has been carefully considered. These issues were for the jury's decision; and so the court correctly ruled.—*Ala. S. & W. Co. v. Tallant*, 165 Ala. 521, 51 South. 835.

[Louisville & Nashville R. R. Co. v. Carter.]

(6) There was no error in permitting testimony descriptive of the condition of the plaintiff's right eye at the time of and since the injury of his left eye. If the right eye was so diseased or defective as to affect its vision, the consequences to follow from the complete loss of the left eye were, of course, greatly more grave and damnifying to the plaintiff.—*A. G. S. R. R. Co. v. Yarbrough,* 83 Ala. 238, 3 South. 447, 3 Am. St. Rep. 715. If the right eye's diseased or defective condition was aggravated by the injury to and loss of the left eye, that fact was due to be considered by the jury in ascertaining the damage resulting to the plaintiff, if the plaintiff's injury was found to be the result of an act or omission for the consequences of which the defendant is accountable.

(7-9) The injury (loss of an eye) being permanent, the mortality tables were admissible, in connection with evidence tending to show decreased earning capacity in consequence of the permanent injury, on the inquiry of probable life expectancy.—*B. R., L. & P. Co. v. Wright,* 153 Ala. 99, 107, 44 South. 1037; 4 Enc. Dig. Ala. Rep. (Michie) pp. 670, 671. The decision in *L. & N. R. R. Co. v. Woods,* 105 Ala. 561, 570, 17 South. 41, does not appear to have involved the vital factor of a claim, and evidence to support it, of a permanent injury to the plaintiff. Where the injury is not permanent, and there has resulted no decreased earning capacity on that account, the pertinent rule of the *Wood Case, supra,* is of course sound. It is here proper to consider the action of the court in instructing the jury in the oral charge as follows: "Now, in the event you are reasonably satisfied from the evidence that the plaintiff is entitled to recover, he is entitled to recover in the event you are reasonably satisfied from the evidence that he has been permanently injured such a sum as the evidence reasonably satisfies you his earning capacity has been decreased, as placed at interest at 8 per cent. per annum will by taking a part of the principal and all of the interest each year, at the end of his life expectancy, as shown by the American Experience Tables of Mortality that have been introduced in evidence, leave nothing."

It is manifest that the purpose in this instruction was to assimulate the rule formulated in the *Trammel,* 93 Ala. 450, 9 South. 587, and *McAdory,* 94 Ala. 272, 10 South. 507, cases for the ascertainment of the productive value of a life that has

been wrongfully taken or sacrificed. In *B. R., L. & P. Co. v. Wright, supra,* it was held that the rule of those cases for the admeasurement of damages was entirely inapplicable to cases where death did not proximately result from the negligence charged. The measure of damages, where the personal injury wrongfully suffered is shown to be permanent, is "compensation for the disabling effects of the injury, past and prospective. In estimating the damages, the loss of time and the incapacity to do as profitable labor as before the injury, as well as the mental and physical suffering caused by it, are pertinent and legitimate factors."—*M. & O. R. R. Co. v. George,* 94 Ala. 199, 10 South. 145; *B. R., L. & P. Co. v. Wright, supra.* The quoted extract from the oral charge was error. It has been considered with reference to the possibility that, in erroneously restricting the measure of the plaintiff's recovery on account of his permanent injury, the defendant was the beneficiary of the error thus committed. Our conclusion is that that result cannot be accepted; for, aside from anything else of a prejudicial (to the defendant) nature inhering in the proposition of the extract from the charge, the extract bore to the jury the necessary implication that the plaintiff's life expectancy was as shown by the mortality tables; whereas, these tables were, at most, but evidence, in no sense concluding the court or the jury, to be considered by the jury in the ascertainment of the probable life expectancy of this plaintiff. Furthermore, the fact that the extract introduced to the jury's consideration a totally inapplicable measure or rule of damages for the injury it hypothesized prevents the adoption of the idea that the error thus committed did not prejudice the substantial rights of the defendant.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur. GARDNER, J., concurs in the conclusion only.