[Louisville & Nashville R. R. Co. v. Blankenship.]

# Louisville & Nashville R. R. Co. *v.* Blankenship.

### Injury to Employee.

(Decided April 12, 1917.   74 South. 960.)

1. **Commerce; Federal Employers' Liability Act; Evidence; Commerce Between States.**—In action under the Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. omp. St. 1916, §§ 8657-8665]) for injury sustained while clearing ditches along defendant railroad's tracks, plaintiff's testimony that there was no other way of draining surface water from the tracks is competent to establish that his work was necessary to render safe defendant's commerce between the states.

2. **Trial; Striking Out Evidence; Estoppel; Cross-Examination.**—A party cannot experiment with a witness on cross-examination and then have an unfavorable answer excluded on motion.

3. **Trial; Striking Out Evidence; Evidence Partly Competent.**—Where a portion of an answer is clearly responsive, it is not the court's duty, on a general motion to exclude the whole answer, to separate the responsive and unresponsive portions.

4. **Commerce; Employers' Liability Act; Interstate Commerce.**—To be liable under the Federal Employers' Liability Act, the carrier must have been actually engaged in interstate commerce, and the employee must have been rendering services facilitating such commerce.

5. **Commerce; Employers' Liability Act; Interstate Commerce.**—A railroad employee engaged in clearing out ditches along defendant railroad's main line which was used for interstate commerce was engaged in interstate commerce within the Federal Employers' Liability Act.

6. **Master and Servant; Employers' Liability Act; Jury Question.**—In action under Federal Employers' Liability Act, defendant's negligence in causing the crane of a ditching machine to hit a telegraph pole jarring plaintiff employee from the flat car on which the ditching apparatus was carried held a jury question.

7. **Negligence; Comparative Negligence.**—Under the Federal Employers' Liability Act, the question of comparative negligence, when both parties were negligent, is for the jury.

8. **Master and Servant; Employers' Liability Act; Contributory Negligence.**—Under the Federal Employers' Liability Act, the defense of contributory negligence is abolished if the railroad's failure to comply with any of the safety acts was the proximate or contributing cause of the injury.

9. **Master and Servant; Employers' Liability Act; Jury Question.**—In action under Federal Employers' Liability Act, plaintiff employee's contributory negligence when jarred from a flat car by the crane of a ditching machine striking a telegraph pole held a jury question.

10. **Appeal and Error; Review; Refusal of New Trial.**—Refusal to grant a new trial because the evidence was insufficient or the verdict contrary to the

evidence will not be reversed unless the court is clearly convinced the verdict was erroneous.

11. Appeal and Error; Waiving Assignments by Failure to Argue.— Assignments of error not insisted upon in argument need not be considered.

APPEAL from Cullman Circuit Court.

Heard before Hon. ROBERT C. BRICKELL.

Action by Homer Blankenship, by his next friend, against the Louisville & Nashville Railroad Company, under the federal Employers' Liability Act, for damages for injuries while engaged in its employment. Judgment for plaintiff, and defendant appeals. Affirmed.

The facts sufficiently appear. The following charges were refused to defendant:

(A) Unless you believe from the evidence that both defendant and plaintiff were engaged in interstate commerce at the time the injury occurred, then your verdict should be for defendant.

(B) Both plaintiff and defendant must be engaged at the time of the injury in interstate commerce to bring this cause within the influence of the United States statutes under which this suit is brought.

(C) I charge you, gentlemen of the jury, as a matter of law, under the evidence in this case, that plaintiff is not entitled to recover because of the failure of the evidence to show that at the time the injury happened both plaintiff and defendant were engaged in interstate commerce.

(D) I charge you, gentlemen, that the character of the work in which plaintiff and defendant were engaged at the time of the occurrence of the injury does not come under the influence of the Employers' Liability Act of Congress.

(E) Under the evidence in this case, if you believe the same, I charge you that plaintiff's big toe was not amputated by reason of the injury as is charged in the complaint in this case.

(F) If you believe the evidence in this case, you must find a verdict in favor of defendant.

(6) Affirmative charge as to the sixth count.

(7) Same as to the seventh count.

(8) If you believe from the evidence that the injury to plaintiff was due to his failure to exercise proper caution and diligence in and about taking down the hose to get the water, and if you believe from the evidence that the boom of the ditcher en-

gine struck a telegraph pole in this case, and that both of these causes combined, and caused his injury, then you cannot find for plaintiff as to counts 6 and 7.

GEORGE H. PARKER and EYSTER & EYSTER for appellant. A. A. GRIFFITH and CALLAHAN & HARRIS for appellee.

THOMAS, J.—The complaint originally contained seven counts. Plaintiff withdrew all but counts Nos. 6 and 7, which stated a cause of action under the federal Employers' Liability Act. To each the defendant pleaded the general issue.

The gist of these counts is that the defendant was engaged in interstate commerce, and at the time of plaintiff's injury was improving its main track, rendering it more safe or permanent by ditching and excavating along it, in Blount county, Ala.; that this work was done by means of a "ditching outfit," which was mounted on a set of tracks on a flat car, and on which track a diminutive steam engine was propelled back and forth; that one Durbin was in charge of this ditching engine; that plaintiff, while acting within the line and scope of his duties as an employee of defendant, was injured by reason of the negligence of said Durbin—count 6 alleging the negligent act to have been the causing of the crane which was attached to the "ditcher" to swing around against a telegraph pole, thereby throwing plaintiff upon the track on said flat car, where he was injured; and count 7 alleging that Durbin negligently conducted himself in and about the management or operation of the ditching engine, thereby causing plaintiff to be thrown down to and upon the track of said flat car, and his foot to be mashed and bruised by said ditching engine; that is, the distinguishing features of these counts are that count 6 attributes plaintiff's injury to the negligence of Durbin in causing the crane to come in contact with a telegraph pole, and count 7 attributes said injury to the negligence of Durbin in the control or operation of the ditching engine, in that thereby plaintiff was thrown on the track and injured by the ditching engine as alleged.

Plaintiff's evidence tended to show that he was injured while discharging the duties of a fireman, and that the general character of the work being prosecuted by defendant and its said agents (including plaintiff) at that point on the main line was cleaning out its ditches, taking out a "slide" toward and along

the main line that had obstructed the ditches and the flow of water therein.

(1) It was competent for the plaintiff to testify that there was no other way for the surface water to be drained off from the track of the main line than through the ditch that was being opened, when the injury occurred, as tending to show an act necessary in improving or rendering more safe the main line of defendant, along which its business as a common carrier of passengers and freight between the states was conducted, and in which work the defendant and the plaintiff were at the time engaged.

Plaintiff's account of his duties was thus detailed by him: "It was the main line of the track where we were working. The passenger and freight trains run over it, including through passenger trains and through freight trains. * * * I was injured about 11 o'clock, between 10 and 11, somewhere along there, in the daytime. My duty on the ditcher was to fire to dig two carloads of dirt, then the other fellow, the pitman, he fired to dig two carloads.

"I was firing just before I was injured. Just before I was injured Durbin gave the signal, two blows for water, and that meant to get ready to take water into the tank of the ditcher from the tank connected with the locomotive engine. When the signal was given it was my duty to get ready to take water. Mr. Durbin instructed me in that duty. To get water I had to climb up and put a hose in the tank of the locomotive. The locomotive was on the track opposite to the ditcher. To take water we had to get the car over where the locomotive engine could get to the side of the ditcher.

"The ditcher was in place, and they went down to pull the locomotive in place, but it had not got in place, but was coming in place. I climbed up on the corner of the flat car of the ditcher. It was necessary to get up there. When I got there I stood just on the corner of the ditcher. The ends stuck out about 2½ inches, and I was standing on that. The car I was on was standing still. The ditcher at that time was moving around. When I got on the place where I was standing the crane on the ditcher was swinging around and hit a telephone pole, and jarred me down. * * *

"When the crane struck the telegraph pole it knocked me down on the track, and then the ditcher engine run back over

me and mashed by toes. The track I was knocked down on was the ditcher track on top of the car. I fell right straight down. The ditcher engine was not running backward and forward on the track before I fell. After I fell it run back on the car. I cannot say how long I was on the track before I was struck; it was quick done. It was done by the time I got down there, just about."

(2, 3) On cross-examination defendant asked, "Blowing the whistle would not disclose your presence if he could not see you would it?" was answered, "Yes, sir; he blew the whistle for water and we knew to take down the hose and get ready to take water."

A party will not be permitted to experiment, in interrogating a witness, by calling out a certain answer and then (the answer proving unfavorable) having it excluded on motion. No error was committed in overruling defendant's motion to exclude this answer.—*E. T., V. & G. R. Co. v. Turvaville,* 97 Ala. 122, 12 South. 63; *Amer. Oak Ex. Co. v. Ryan,* 112 Ala. 336, 20 South. 644; *Farrow v. N. C. & St. L. Ry.,* 109 Ala. 448, 20 South. 303; *Hunnicutt v. Higginbotham,* 138 Ala. 472, 35 South. 469, 100 Am. St. Rep. 45. A part of the answer was clearly responsive, and it may be that the whole answer was responsive to defendant's question. It was not the duty of the court, on a general motion to exclude the whole answer, to separate the responsive and competent testimony from that which was not responsive and was illegal.—*Ray v. State,* 126 Ala. 9, 28 South. 634; *Henry v. Hall,* 106 Ala. 84, 17 South. 187, 54 Am. St. Rep. 22; *Ala. Mid. R. Co. v. Darby,* 119 Ala. 531, 24 South. 713; *Davis v. State,* 131 Ala. 10, 31 South. 569; *Rarden v. Cunningham,* 136 Ala. 263, 34 South. 26; *Weaver v. State,* 139 Ala. 130, 36 South. 717.

Defendant requested several written charges that raised the question whether there was proof that at the time of the alleged injury both appellant and appellee were engaged in an act of interstate commerce, or assisting therein, within the meaning of the federal statutes. The true test was declared in *Western Railway of Alabama v. Mays,* 197 Ala. 367, 72 South. 641, 643, to be whether the work or act in question was "a part of the interstate commerce in which the carrier was engaged;" likewise (stated in different terms) in *Louisville & Nashville Railroad Co. v. Carter,* 195 Ala. 382, 385, 70 South. 655, 657, where it is said that the relation exists "not only when the injured

employee's service was in or about the act of transporting persons or things, but also when his service was in or about the maintenance or repair of agencies already devoted to or immediately capable of facilitating some essential feature of interstate commerce."

A track over which interstate commerce is being moved, or is to be moved, in the usual course of the carrier's business, is an instrumentality of such commerce; and an employee of an interstate carrier who is engaged, when injured, in a service "immediately productive of the maintenance or repair of intimately connected and essential, indispensable features of interstate commerce," is within, and his rights are protected and governed by, the federal statute.—*Ex parte Atlantic Coast Line Ry. Co.*, 190 Ala. 132, 67 South. 256; *L. & N. R. R. Co. v. Carter, supra; Western Railway of Ala. v. Mays, supra; Mondou v. N. Y., N. H. & H. R. Co.*, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; *Pederson v. D., L. & W. R. R. Co.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *N. C. R. R. Co. v. Zachery*, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; *Ill. Cent. R. Co. v. Behrens*, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; *Ruck v. C., M. & St. P. Ry. Co.*, 153 Wis. 158, 140 N. W. 1074.

The statute has been applied to trainmen. It has been applied to an employee working at a coal chute, coaling engines, on a railroad engaged in interstate traffic, though he was also required to serve engines engaged in intrastate service (*Southern Railway Co. v. Peters*, 194 Ala. 94, 69 South. 611); to a brakeman unloading a barrel of oil shipped from Ohio to a point within this state (*Western Railway of Ala. v. Mays, supra*); to an engineer hauling coal for use in interstate transportation (*Barlow v. Lehigh Valley Ry.*, 158 App. Div. 768, 143 N. Y. Supp. 1053); to one pumping water for engines in such service (*Horton v. Oregon, Washington R. & Nav. Co.*, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. [N. S.] 8); to a clerk crossing the tracks in the yards to meet an incoming interstate train, and whose duty it was to take the numbers, the seals, and the labels of cars, some of which were engaged in intrastate traffic (*St. L., San F. & T. Ry. Co. v. Seale*, 229 U. S. 156, 161, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156). In the last-mentioned case the court said: "The train from Oklahoma was not only an

[Louisville & Nashville R. R. Co. v. Blankenship.]

interstate train, but was engaged in the movement of interstate freight, and the duty which the deceased was performing was connected with that movement, not indirectly or remotely, but directly and immediately. The interstate transportation was not ended merely because that yard was a terminal for that train, nor even if the cars were not going to points beyond. Whether they were going further or were to stop at that station, it still was necessary that the train be broken up and the cars taken to the appropriate tracks for making up outgoing trains for unloading or delivering freight, and this was as much a part of the interstate transportation as was the movement across the state line."

A foreman was held to be protected by the statute when injured while keeping in repair the tracks and switches of his employer's freightyard used for "breaking up and making up" trains devoted to interstate as well as intrastate traffic.—*Willever, Adm'x, v. D., L. & W. R. Co.*, 87 N. J. Law, 348, 94 Atl. 595. Similarly a section foreman who, after having repaired a broken rail, was returning on a hand car to his station, and was injured while helping to lift the hand car from the main line that a train might pass, was held to be protected by the act.—*Texas & Pac. Ry. Co. v. White* (Tex. Civ. App.) 177 S. W. 1185. Again a foreman helping to replace rails on a road being used for both local and interstate freight, and so injured, was held to be within the terms of the statute.—*Cherpeski v. G. N. R. Co.*, 128 Minn. 360, 150 N. W. 1091.

For illustration of the application of the statute to trackmen, these cases may be noted: An employee who had been engaged in repairing a trestle on an interstate railroad, and who was killed while returning to the 'bunk car" furnished by defendant to such employees, was held to be within the protection of this statute (*L. & N. R. R. Co. v. Walker*, 162 Ky. 209, 172 S. W. 517) ; likewise a section hand engaged in the "upkeep" of such railroad track (*Truesdell v. Chesapeake & Ohio R. Co.*, 159 Ky. 718, 169 S. W. 471; *Zikos v. Oregon & N. Co.* [C. C.] 179 Fed. 893) ; a laborer assisting in the operation of a steam shovel employed in the repair and maintenance of defendant's tracks, such tracks being used to transport interstate commerce (*Tralich v. Chicago, etc., Co.* [D. C.] 217 Fed. 675) ; an employee helping to remove trash or drift, so that there might be erected a temporary trestle or bridge for the passage of trains bearing both interstate

[Louisville & Nashville R. R. Co. v. Blankenship.]

and intrastate traffic, the old bridge having been theretofore so used (*Columbia & P. S. Co. v. Sauter*, 223 Fed. 604, 139 C. C. A. 150) ; one engaged in sweeping snow from a track used for both inter and intra state traffic (*Hardwicke v. Wabash R. Co.*, 181 Mo. App. 156) ; and a switch repairer was also held to be within its protection (*Cent. R. Co. of New Jersey v. Colasurdo*, 192 Fed. 901, 113 C. C. A. 379).

The rule of the *Pedersen Case* was reaffirmed in *N. C. R. Co. v. Zachery*, 232 U. S. 248, 260, 34 Sup. Ct. 305, 309, 58 L. Ed. 591, Ann. Cas. 1914C, 159, where the plaintiff had prepared an engine for a trip to remove freight in interstate commerce, and was immediately injured in going across the main line in the yard, in the direction of his boarding house. Mr. Justice PITNEY said: "It is said that, because deceased had left his engine and was going to his boarding house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine."

In *Southern Railway Co. v. Lloyd*, 239 U. S. 496, 36 Sup. Ct. 210, 60 L. Ed. 402, the plaintiff was an engineer of an interstate road. He was proceeding from the repair shop, where his engine had been, and was injured on a side track as he examined his engine. The injury was held to be within the act, under the authority of *Zacharys' Case*.

In *Pecos & Northern T. Railway Co. v. Rosenbloom*, 140 U. S. 439, 36 Sup. Ct. 390, 60 L. Ed. 730, the plaintiff was in the employ of the railway company as a ticket clerk, and he was required to be in the switchyard, to take and preserve a record of the numbers on outgoing cars and to seal the cars which needed sealing. A long freight train was leaving the yard, on its regular run, along switch track No. 4, and, as required by his duties, plaintiff was walking between tracks 4 and 5, and near the train, and observing and noting car numbers, and while so engaged a

[Louisville & Nashville R. R. Co. v. Blankenship.]

ballast car struck him and caused his injury. The court said that it conclusively appeared from the evidence that the freight train on track 4 consisted of 30 or more cars, which cars, with one exception, were moving in interstate commerce; that, "if M. A. Rosenbloom, at the time of his death, was engaged in examining seals and making record of seals on cars being transported interstate over the line of defendant and other lines of connecting carriers, and if such work was a necessary part and customary work, reasonably carried on by defendant as a part of its business, transporting freight interstate over its line," or if he had then just completed such inspection and not yet made his record, he was within the statute.

There has been no recession in the later decisions of the United States Supreme Court from the principle announced in the *Pedersen Case*.

(4) It is clear from these cases that the rule is that the carrier must be actually engaged in interstate commerce, and the employee must be rendering such service to the carrier as enables or facilitates it in the performance of interstate commerce. Such is the liberal construction given the federal Employers' Liability Act by the Supreme Court of the United States. In *Pedersen v. D., L. & W. R. Co., supra*, Mr. Justice Van Devanter, speaking for the court, declared that tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars, and that sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair; that the security, expedition, and efficiency of commerce depends in large measure upon this being done. Indeed, the statute proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct "any defect or insufficiency" in "cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment" used in interstate commerce. It is clear that interstate commerce by railroads and other transportation agencies cannot be separated into several elements, and the nature of each determined, regardless of its relation to others or to the business as a whole.

(5) The evidence is clear that at the time of the injury the defendant common carrier was engaged in an act of interstate commerce, and that the services which plaintiff was rendering it in repairing and making safe defendant's tracks on its main

line were facilitating such carrier in the doing of, and the engaging in, an act of interstate commerce; that is, that the services so rendered by plaintiff were a part of the interstate commerce engaged in by the defendant.

When the federal act was first construed by the Supreme Court of the United States, this liberal construction of the act was declared (*Mondou v. N. Y., N. H. & H. R. Co., supra*) as follows: "The second objection proceeds upon the theory that, even though Congress has power to regulate the liability of a carrier for injuries sustained by one employee through the negligence of another where all are engaged in interstate commerce, that power does not embrace instances where the negligent employe is engaged in intrastate commerce. But this is a mistaken theory, in that it treats the source of the injury, rather than its effect upon interstate commerce, as the criterion of congressional power. As was said in *Southern Railway Co. v. United States*, 222 U. S. 20, 27, 32 Sup. Ct. 2, 56 L. Ed. 72, that power is plenary, and competently may be exerted to secure the safety of interstate transportation and of those who are employed therein, no matter what the source of the dangers which threaten it. The present act ,unless the one condemned in *Employers' Liability Cases*, 207 U. S. 463 [28 Sup. Ct. 141, 52 L. Ed. 297], deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employees, while engaged in such commerce. And, this being so, it is not a·valid objection that the act embraces instances where the causal negligence is that of an employee engaged in intrastate commerce; for such negligence, when operating injuriously upon an employee engaged in interstate commerce, has the same effect upon that commerce as if the negligent employee were also engaged therein."

So also in *Illinois Central Railroad Co. v. Behrens, supra*, 233 U. S. 477, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, on the authority of the *Mondou Case, supra*, and *Minnesota Rate Cases*, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A; 18, and others, it was declared that, considering the status of the railroad as a highway for both interstate and intrastate commerce, the interdependence of the two classes of traffic in point of movement and safety, the practical difficulty in separating or dividing the general work of the switching crew, and the nature and extent of the power confided to Congress by the commerce clause of the

[Louisville & Nashville R. R. Co. v. Blankenship.]

Constitution: "We [the court] entertain no doubt that the liability of the carrier for injuries suffered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce."

Under this construction of the federal statute defendant's requested charges A, B, C, and D were properly refused as misleading.

(6) There was no error in the refusal of charges E and F and 6 and 7, since under the evidence such questions were for the jury as to both counts of the complaint.—L. & N. R. R. Co. v. Carter, supra; Alabama S. & W. Co. v. Tallant, 165 Ala. 521, 51 South. 835. The seventh count was supported by statements of the plaintiff, as a witness in his own behalf, to the effect that just before he was injured Durbin gave the signal blow for water, which the witness stated meant to get ready to take water into the tank of the "ditcher" from the tank connected with the locomotive engine; that, when said signal was given, it was the duty of plaintiff "to get ready to take water;" that Mr. Durbin instructed him in that duty; that to get water witness had to climb up and put a hose in the tank of the locomotive.

From such testimony it appears that, when Durbin gave the signal for taking water, he knew it to be plaintiff's duty to come to that point to get the hose for such purpose, which hose was located as the witness explained. The jury were authorized to infer, from such knowledge of the status produced by the giving of such signals, that Durbin knew the probably serious consequences of striking the telegraph pole with the boom or crane while plaintiff was discharging his said duty in getting and putting the hose in said tank. Having given the signal to take water, and being then in the act of shifting the boom or crane or other machinery operated in the act of taking water, it was the duty of Durbin to so operate the engine and so manipulate or guide the boom or crane or other machinery as to prevent injury to those of defendant's agents engaged with him in the act.

(7, 2) Charge 8 incorrectly states the law under the federal statute. The question of comparative negligence, if both parties were guilty of negligence, is one for the jury. By the Employers' Liability Act the defense of contributory negligence is entirely abolished if the proximate or contributing cause of the injury

[Thornton v. The Southern Railway Co.]

was the failure of the railroad company to comply with the requirements of any of the safety acts of Congress.—*Grand Trunk Ry. Co. v. Lindsay,* 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168; *Johnson v. Great Northern Railway Co.,* 178 Fed. 643, 102 C. C. A. 89; *Western Railway of Ala. v. Mays,* 197 Ala. 367, 72 South. 641; Thornton's Federal Employers' Liability Act (3d Ed.) 129, § 71. See, also, *Seaboard, etc., Co. v. Horton,* 162 N. C. 424, 78 S. E. 494; s. c., 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475.

(9) Under the evidence before us, as to the quo modo of the injury, and the evidence tending to impeach Durbin as to statements made by him after the injury that the boom or crane did strike the telegraph pole, the question was made one for the jury, whose finding the court will not overturn.

(10) Under the foregoing authorities, and the rule prevailing in this state since its enunciation in *Cobb v. Malone,* 92 Ala. 630, 9 South. 738, recently reaffirmed in *Nashville, Chattanooga & St. Louis Railway v. Crosby,* 194 Ala. 338, 70 South. 7, no reversible error was committed in the court's declining to grant defendant's motion for a new trial.

(11) The other assignments of error not being insisted upon in argument by counsel for appellant, it is unnecessary to consider the same.—*Lee v. Georgia Cotton Co.,* 196 Ala. 599, 72 South. 162; *R. I. & S. Co. v. Quinton,* 194 Ala. 126, 69 South. 604.

Let the judgment of the circuit court be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.