(80 South. 360)

ALABAMA CO. v. SANDERS.    (6 Div. 774.)

(Supreme Court of Alabama.    Nov. 28, 1918.)

1. MASTER AND SERVANT ☞264(10) — INJURIES TO SERVANT—RESPONDEAT SUPERIOR—ISSUES AND PROOF.

Where injured servant sought recovery only on the theory of negligence of fellow servant under the doctrine respondeat superior, there could be no recovery in the absence of positive evidence of negligence of some servant.

2. MASTER AND SERVANT ☞278(17)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

In servant's action for injury, evidence *held* insufficient to show negligence of mine switchman, resulting in car running upon and over plaintiff.

3. MASTER AND SERVANT ☞180(5)—INJURIES TO SERVANT—PERSONS IN CHARGE OF RAILWAY APPARATUS.

Mine servant engaged in hauling tramcars in and out of mine was the one in charge of the cars and switches within Code 1907, § 3910, subd. 5, and so could not recover under such statute for alleged negligence of switch tender for failure to send a car down the proper track, with the result that plaintiff, on the wrong track, was injured.

4. MASTER AND SERVANT ☞246(1)—INJURIES TO SERVANT—SUDDEN PERIL.

Where mining car operator upon derailment of cars refused to assist in placing them on the track, and went to a point between the cars and went to sleep, and a wild car coming down the tracks placed him in a position of sudden peril, he could not recover on the theory of sudden peril, having placed himself voluntarily in such position.

5. MASTER AND SERVANT ☞289(38)—INJURIES TO SERVANT—SUDDEN PERIL RULE.

As a rule, one who suddenly acts wildly and madly when unwarned peril surrounds him is not as a matter of law chargeable with contributory negligence for failing to exercise the care and prudence of a prudent man under normal and ordinary conditions, as instinct would prompt him to use diligence to save his life or insure his safety.

6. MASTER AND SERVANT ☞289(38) — INJURIES TO SERVANT — SUDDEN PERIL — QUESTIONS FOR JURY.

Ordinarily it is for the jury whether an injured servant suddenly placed in a position of peril has acted negligently.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action by Sandy Sanders against the Alabama Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Foster, Verner & Rice, of Tuscaloosa, and Stokely, Scrivner & Dominick, of Birmingham, for appellant.

Weatherly, Deedmeyer & Birch, of Birmingham, and Harwood, McKinley, McQueen & Aldridge, of Tuscaloosa, for appellee.

MAYFIELD, J. The action is by a servant against the master, to recover damages for personal injuries. The complaint consisted of three counts, denominated A, B, and C. All the counts are drawn under the fifth subdivision of the Employers' Liability Act, section 3910 of the Code. Counts A and C declare against the negligence of a servant in charge of a switch upon a railway; while count B declares as for the negligence of a servant who had charge or control of a car upon a railway. Several pleas of contributory negligence were pleaded to each count of the complaint.

The injury was caused by a tramcar's running against the plaintiff, such car being used by the defendant in its coal mine. The tramcar was loaded with rock or slate, débris which was being removed from the mine, and was intended to be dumped as such; but the car, by some means not fully explained, went wild on the track on which coal was carried to the tipple, and, while thus running wild, struck the plaintiff, inflicting the injuries of which complaint is made.

The plaintiff, at the time the car broke loose from those who were attempting to put it onto the track leading to the rock dump pile, was asleep between the two tracks, and was awakened by some one hallooing, "Look out! look out!" and he, thinking or supposing that the car was on the track leading to the rock pile, ran across the other track, in front of the car, and was struck and injured thereby.

Plaintiff's chief business was that of trip rider; that is, he carried empty cars from the mouth of the mine, into the mine, and the loaded cars out to the mouth or what was called the knuckle, where the power, which was transmitted to the cars through a rope or cable, was removed; the motive power being generated by a stationary engine.

On the occasion in question a car or cars were wrecked—that is off the track—near the entrance of the mine, which prevented plaintiff from taking more empties into the mine; and while these cars, which were loaded with stone, were being removed by other servants of defendant, or while waiting for them to be removed, plaintiff went to

a fire which was built in an open space, between the tracks leading, one to the rock pile and the other to the coal tipple, and there he fell asleep. Those who were removing the cars, and the superintendent, requested plaintiff to help to remove the derailed cars so the empties could be carried into the mine. This plaintiff declined to do, but went to sleep, with the result before stated.

It was night, and cold, and the servants or employés of the defendant all seemed to stand around this fire between the two tracks, when not otherwise engaged at their particular work. The exact distance of the fire from either track, or from the mouth of the mine, is not shown with any degree of accuracy.

Exactly how the car escaped from the control of those attempting to put it onto the dump track, or whether the switch was thrown so as to put it on the rock track or on the coal track, does not appear from the evidence. There is some evidence to the effect that the car could not have gone onto the coal track if the switch had been thrown for it to take the rock track. The evidence, however, does show without dispute, that the servants whose business it was to throw or fix the switch had thrown it for the car to take the rock track. Whether it was so thrown at the instant the car passed it does not appear; but that it was properly thrown by the switchman for the purpose of running this car onto the rock dump track does appear without dispute. So if the switch was thrown wrong, it was by some other person than the one who was in charge and control of the switch.

The contributory negligence alleged was that plaintiff had no lamp or light with which to see his way, or to see the car, as he should have had; that he was asleep and not engaged in the service for which he was employed, when injured; that he failed or refused to assist in removing the wrecked car from the track, as requested by those whose orders and directions he should have obeyed; and that he was guilty of negligence in running into danger in front of the wild car; that had he remained where he was asleep, or gone in any other direction, or had his lamp burning, as he should, he would have seen the car and could have escaped.

The jury found a verdict for plaintiff for $1,500, and judgment was entered accordingly, and defendant appeals.

The defendant requested the affirmative charge separately as to each count of the complaint, and assigns and argues as error the refusal to give each of these instructions. It is insisted: First, that there was an entire failure of proof, because it was not shown that the tram track in question was a railway within the meaning of subdivision 5 of the act in question; second, that the undisputed evidence showed that the switch-man properly threw the switch for the rock dump track; third, that there was an entire failure of proof to show that the men who pushed the wild car over the knuckle, were persons in charge of the car within the meaning of subdivision 5.

### Opinion.

[1] The trial court should have given the affirmative charges as requested. In order for the plaintiff to be entitled to go to the jury as to any one of the counts on which the trial was had, it was necessary to have proof—some at least—tending to show culpable negligence on the part of some servant of the defendant who had "charge or control" of the "switch" or of the "car" which is alleged to have occasioned the injury. Every count, of course, is based upon actionable negligence on the part of some servant of the defendant. If no particular servant of the defendant, other than plaintiff, is shown to have been guilty of actionable negligence which would make the servant personally liable to the defendant, then of course there can be no recovery in this action against the defendant, because no negligence whatever is alleged on the part of the defendant. The defendant's liability in every count is made to depend upon the actionable negligence of one particular servant who was in charge or control of the switch, or of the car which occasioned the injury. The liability of the defendant is thus made to rest exclusively upon the doctrine of respondeat superior. To repeat, there is here no claim in pleadings or in proof as to corporate negligence on the part of the defendant. The liability, if any, rests on the doctrine of respondeat superior.

[2] Could it be contended in this case that the evidence shows any personal liability on the part of any particular servant of defendant for whose negligence this statute requires the defendant to respond? The evidence not only fails to show any negligence on the part of the switchman, but affirmatively shows without dispute that he did throw the switch properly to run the car onto the rock dump track, and not onto the tipple track on which it went. If he was guilty of any negligence, it was not as to the switch, but was in assisting others to rail the derailed car and in pushing it by hand over the switch or knuckle, though there is absolutely no evidence to show negligence on his part as to this. The best that can be said of this for the plaintiff is that it is possible that some one was guilty of negligence as to the manner of putting the car on the track and over the knuckle; the evidence does not, as to this matter, affirmatively show that the switchman was guilty of any negligence.

[3] If, however, there had been shown any negligence on his part as to this, he was not in charge or control of the car within the

meaning of the statute, nor in charge of the switch within the meaning of the statute. The plaintiff himself was the person in charge and control of the cars and switches in the mine.

[4] The evidence is in conflict as to what duty the plaintiff was to perform, after the cars reached the surface, as to conveying them to the tipple or to the dump pile. The plaintiff was certainly not in the discharge of his duty at the time of the injury, and for some time immediately preceding. He was, according to his own, and the undisputed evidence, "asleep at the switch." He had refused the request of his fellow servants and his superior to assist in removing the derailed car which injured him. He chose to sleep by the fire, rather than assist in clearing the wreck, or wait at his post until it was cleared. If he was suddenly overtaken by danger, and thus forced by nature to act wildly and without usual or reasonable care, because placed in a position of peril, the obviously just answer is that he voluntarily placed himself in the dangerous situation, and must blame himself.

[5, 6] As a rule, one who suddenly acts wildly and madly, when unwarned peril surrounds him, is not, as a matter of law, chargeable with contributory negligence for failing to exercise the obligations of care and prudence imposed upon a prudent man under normal and ordinary conditions, as instinct would prompt him to use diligence to save his life or insure his safety, and the law wisely leaves it to the jury to determine whether or not his conduct under such circumstances amounts to negligence. Louisville & Nashville Ry. Co. v. Thornton, 117 Ala. 282, 23 South. 778; Richmond & Danville Ry. Co. v. Farmer, 97 Ala. 141, 12 South. 86. Of course, this rule does not obtain and cannot be invoked by one who wrongfully and voluntarily puts himself in such a dangerous position. McCauley v. Tenn. Coal, Iron & Ry. Co., 93 Ala. 357, 9 South. 611; Birmingham Ry. Co. v. Fox, 174 Ala. 675, 56 South. 1013. In McCauley's Case, above, 93 Ala. 356, 9 South. 611, it is said:

"The rule that a person, when exposed to sudden and unexpected danger, is not responsible for acting without judgment, or 'wildly,' depends materially upon the facts and circumstances of the case, and as to whether he has wrongfully and voluntarily put himself in a place of danger."

Here, the undisputed evidence is that the plaintiff voluntarily placed himself in the position of peril, if such it was, and that it was with full knowledge of the peril that he went to sleep, instead of being at his post of duty, or assisting in putting the derailed car onto the track. He was in no position to invoke the above rule, to excuse his act in running in front of the loose or wild car.

It results that the affirmative charge should have been given for the defendant as requested.

Reversed and remanded.

SAYRE, GARDNER, and THOMAS, JJ., concur.