153 So. 748

### BYARS v. HOLLIMON.
### 8 Div. 575.

Supreme Court of Alabama.
March 22, 1934.

Rehearing Denied April 12, 1934.

R. L. Almon, of Moulton, and Melvin Hutson, of Decatur, for appellant.

Wm. L. Chenault, of Russellville, for appellee.

BROWN, Justice.

A number of the assignments of error are predicated on the refusal of special charges dealing with the question of contributory negligence on the part of the plaintiff, and, while it appears from the court's oral charge that the defendant pleaded the general issue and contributory negligence, the pleas were not in short by consent, and are not embodied in the record.

Contributory negligence is a defense that must, in the absence of an agreement to plead otherwise, be pleaded specially and with particularity, and no other acts of contributory negligence than those specially pleaded can be proved on the trial, and, if proved, cannot be made the predicate for a verdict for the defendant. Southern Railway Co. v. Shelton, Adm'r, 136 Ala. 191, 34 So. 194; Centennial Ice Co. v. Mitchell, 215 Ala. 688, 112 So. 239.

Therefore, in the absence of the special pleas of contributory negligence, we are not in a position to review the court on this question, and appellant can take nothing by these assignments of error.

Though it be conceded, in view of the defendant's testimony as to his experience in driving an automobile, it was permissible for him to express his opinion that the ditch on the north side of the road was deep enough to turn the car over, nevertheless the witness had already testified that he turned the car "as far to the north side of the road as I could *without dumping over in the ditch.*" Therefore the ruling, if error, was without injury. (Italics supplied.)

The appellant insists that the evidence shows, without dispute, that the negligence of Paul Hollimon, the father of the plaintiff who was driving the wagon in which plaintiff was riding, was the sole proximate cause of plaintiff's injury, and therefore that the court erred in refusing the affirmative charge.

This contention concedes, inferentially at least, that, even though Paul Hollimon was negligent and his negligence proximately concurred with the negligence of the defendant, causing the injury, if defendant was guilty of negligence, still the plaintiff would be entitled to recover, unless plaintiff himself was

guilty of contributory negligence in the respect specially pleaded, proximately contributing to his own injury. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A. L. R. 1.

The evidence shows that Paul Hollimon, with some friends and the members of his family, the plaintiff, a boy fourteen years of age, being one of them, was traveling along the public highway, going west, in a wagon drawn by a team of mules; that it was dark, and there was no light on the vehicle in which plaintiff was riding; that the highway was about 18 feet wide; that, when the wagon and team got near the church where the occupants were going, Hollimon turned the team diagonally from the north side of the road to the south, and defendant's automobile being driven by himself, came in collision with the rear of the wagon, and plaintiff, who was in the rear end of the wagon bed with one of his feet swinging off the rear, was thrown out of the wagon and injured. Hollimon testified: "I think I was driving my mules in a walk, pretty sure I was. I seen (saw) Dr. Byars' car coming, the best of my judgment he was something like 150 or 200 yards when I first saw it. I was driving on the north side of the road; the Christian Church was on the south side; I went on the north side until about even with the road that turned off to the other side, and I just angled my mules across to the left hand side of the road to go on the church ground. The car struck the wagon, the mules and wagon were off the highway at that time, the end of the wagon lacked anywhere from eighteen inches to two feet of being to the curb of the rocks on the south side, and that is about the position it was in when the car struck. * * * I was going down grade a little before I stopped; when this car struck I couldn't stop right then, but the mules went down some eight or ten feet into the ditch there. Dr. Byars' car, after it struck my wagon, went to the north side of the road. After it struck, I looked for the tracks that the car made and that the wagon made; the wagon wheels skidded close to the edge of the rock, something like eighteen inches or maybe two feet; not over two feet of this curb or rock of the south edge, I was angling southwest with my wagon. When he struck me, the wheels of the wagon skidded about two feet down the road back east. The car skidded; when it struck the wagon, it was—he had turned the car in a northeast like direction, and it come (came) around *and slapped the hind wheel of his car, hit the hind wheel of my wagon,* *it went to the north side of the road then."* (Italics supplied.)

On cross-examination he testified: "In my judgment, when I started to turn across the road there, the car was about 150 or 200 yards from me. I based my judgment as to how far the car was from me just by being out on the road at various times and seeing cars and meeting cars and judging from the distance how far they were from me. It seems to me that the road was dusty at that time. My judgment is that the mules were walking all the time. I didn't have any light on the wagon. * * * After the accident, the coupling pole was broke between the back wheel and the front bolster, from the coupling of the wagon in the middle to the front bolting; it was broke in front of the coupling about half in two and split up to the front and back out; it lacked about, I judge anywhere, maybe from four to six inches being as long as the wagon bed. I don't know when I examined the coupling pole last."

The plaintiff testified: "I saw the car coming, in my best judgment when I first saw the car it was something like 200 yards, I guess. The mules continued to walk in crossing the road and going off at that side. At the time the car struck the wagon, the wagon was—the front end of the wagon was plumb off the road and the back wheels was (were) might near off. *The hind wheel of the car struck the hind wheel of the wagon.* The car was traveling on the south side of the road before it struck the wagon; when it struck the wagon, it knocked me out of the wagon. I hit on the south side of the road right about the curb of the rocks." (Italics supplied.)

Defendant's witness Ernest Guest, an eyewitness to the occurrence, testified: "Paul Hollimon the father of plaintiff was driving a wagon in a westerly direction along the highway, running from Moulton to Mount Hope, and defendant was driving a car along that highway in an easterly direction; that just as Paul Hollimon got within about *fifty feet* of the side road that turns off to the Christian Church, that said Hollimon being on the north side of said road, suddenly turned his team to the left to turn off the road, and defendant was about thirty feet west of the wagon when the wagon turned to the south side of the road. Just as the wagon turned to the left and across the road defendant applied his brakes and I could hear the brakes grinding and wheels skidding and defendant turned as far to the north as he could without going into the

north ditch, and Hollimon had a long coupling pole sticking out about four or five feet in the rear of the wagon and defendant's car hit this pole and the plaintiff, who was sitting in the back end of the wagon with his feet dangling out, fell out of the wagon. Defendant was driving about 20 or 25 miles per hour. I was one of the first on the scene and examined the grounds and defendant's car tracks were across on the edge of north ditch; and where the wagon wheels skidded was north of the middle of the road, and the plaintiff was on the north side of the road."

The defendant testified: "I was driving east, Mr. Hollimon driving west in a wagon, and Mr. Ayers was some little distance ahead of me. I saw his light, however, all the time. It was pretty dusty, but when I got to this little abutment on the road where the rocks abut against the highway leading off to go out to the church, Mr. Hollimon turned to the left about, I would say around thirty feet this side of there going on the old road that in former times before this highway was built, was the Mt. Hope road, but turned around south of the church and he didn't go up to this abutment, but turned off on the old road, and he began turning there just about the time I got even with this abutment, which was about thirty feet west of where he turned off. When I saw the mules' heads and the shoulders, I applied my brakes immediately and turned to the left and I·put my wheels over the left side of the rock on the north side of the highway and struck something about the rear end of his wagon— I thought the coupling pole, and I am sure the coupling pole, and I got my car stopped, I choked my engine down and stopped there; and that is about the substance of what took place previous to the accident. When I saw the man turn his team in front of me, or towards the left side of the road, I applied my brakes immediately, and took my foot off the accelerator. I left the car in gear. I have had many years experience in operating a car, and that is the most effective way of stopping a car at a short distance; and turned as far to the north side of the road as I could without dumping over in the ditch. I turned to where my wheels were off the graveled part of the road."

Several witnesses testified as to the location of the tracks of the automobile and the wagon, and their testimony corroborated the testimony of the defendant.

While it cannot be affirmed as a matter of law that there was no evidence—not even a scintilla—going to show negligence on the part of the defendant, and therefore that the court erred in refusing the affirmative charge, nevertheless our judgment is that the great weight of the evidence shows that the defendant was not guilty of negligence, and that the plaintiff's hurt was proximately caused by the negligence of his father, Paul Hollimon, and said negligence was the sole proximate cause of the injury.

If, as defendant's evidence and the attendant circumstances show, Hollimon pulled his team to the south in an effort to drive onto the church grounds when defendant's car was within thirty feet of the team, moving at the rate of from 20 to 35 miles per hour, defendant through the negligence of Hollimon was confronted with a situation of "extreme and imminent peril necessitating to his extrication quick decision and action," and he should not be held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation and choose the best means of escaping peril or preventing injury. Central of Georgia Railway Co. v. Foshee, 125 Ala. 199, 214, 215, 27 So. 1006; Woodward Iron Co. v. Andrews, 114 Ala. 243, 257–259, 21 So. 440.

The condition of the coupling pole after the accident goes strongly to show that the rear end of the automobile came in contact with the protruding end thereof, and, when this fact is considered with the testimony showing the location of the tracks of the wagon and the automobile, and the positions of said vehicles immediately after the accident, and the further fact, which is undisputed, that the front end of the automobile did not strike the wagon, the testimony of the plaintiff that, when he tried to drive the team across the highway, the automobile was 150 to 200 yards west of him, is unreasonable, and hence without probative force.

We therefore hold that the court erred in overruling the defendant's motion for a new trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.