159 So. 47

### CLARK v. FARMER.
### 4 Div. 772.

Supreme Court of Alabama.
Jan. 24, 1935.

W. L. Lee, Farmer, Merrill & Farmer, Tompkins & Ramsey, and L. A. Farmer, all of Dothan, for appellee.

O. S. Lewis, of Dothan, and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

598

GARDNER, Justice.

Plaintiff sues as the widow of B. G. Farmer, whose death she insists was produced by the negligent operation of an automobile driven by defendant. The accident occurred in the state of Florida, some ten miles south of Blountstown, and the action is rested upon the Florida statute. Sections 4960, 4961, Revised General Statutes of Florida 1920; Caine v. St. Louis & S. F. R. Co., 209 Ala. 181, 95 So. 876, 32 A. L. R. 793. The car was owned by deceased, and defendant was his chauffeur.

█ The question here of first importance relates to the refusal of the affirmative charge requested by defendant. It is of course not questioned that a chauffeur driving for and in the presence of his master as an occupant of the car is liable for negligent injury to his master. "The relation of master and servant tends rather to increase than to absolve the chauffeur from the duty of care." Whiddon v. Malone, 220 Ala. 220, 124 So. 516, 517.

█ But defendant insists there is no evidence justifying a reasonable inference of negligence on his part, even though viewed in the light of the "scintilla rule" here prevailing. Penticost v. Massey, 202 Ala. 681, 81 So. 637; Byars v. Hollimon, 228 Ala. 494, 153 So. 748.

It is recognized, of course, as argued by defendant, that mere speculation or conjecture will not suffice, and that a definitely charged breach of duty must appear from the proof. Alabama Consolidated Coal & Iron Co. v. Cowden, 175 Ala. 108, 56 So. 984; Central Bank & Trust Co. v. Alabama Broom & Mattress Co., 204 Ala. 410, 85 So. 738; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257. Or, as otherwise stated, plaintiff must show a state of facts from which negligence charged in the complaint may be reasonably inferred. Carlisle v. Central of Georgia Ry. Co., 183 Ala. 195, 62 So. 759. Nor can negligence be assumed from the mere fact of an injury. Lawson v. Mobile Electric Co., supra.

At the time of the accident, the car was being driven by defendant north towards Dothan. The deceased was on the front seat with the defendant chauffeur, and in the rear was Dr. Green. The latter testified the rate of speed was between fifty and fifty-five miles per hour, while defendant places the speed at forty-five miles an hour. Defendant says deceased cautioned him not to exceed a speed of forty-five miles per hour, and Dr. Green understood him to fix the limit at fifty, or fifty-five, miles. Deceased had never operated a car, and this limitation as to speed is to be viewed with the further precaution given the chauffeur by deceased to keep a lookout for cows and sheep. They had traveled some ten or fifteen miles, and many cows and sheep had been noticed along the roadway. Just preceding the accident a cow crossed the road in front of the car. This was after dark. Defendant saw the cow, slowed down, did not keep straight ahead, but "got out of the way." Immediately thereafter, and about one hundred yards from where the cow crossed, a calf ran upon the road in front of the car. Defendant "slammed on the brakes hard and locked the wheels," and the car went off the road bed into a ditch, turned on one side, resulting in injury to deceased.

This occurred immediately in front of the store and filling station of one Tindle. The right of way is sixty feet wide, and the paved portion twenty-one feet in width—the road straight for a mile and a half south and half a mile north of the filling station, with no obstruction of the view. The ground was slightly rolling. There were two lights (delco) in front of the station on a post, one on each side, shining out on the road, enabling one to "see very well out in the road," and "recognize anybody," as Tindle states it. The accident occurred immediately in front of Tindle's store, and the calf came from that direction—from the right.

Dr. Green states he saw the calf as it ran upon the road and as it reached the edge of the pavement some thirty feet in front of the car, which, in his opinion, was running at a speed of fifty or fifty-five miles an hour; that the calf stopped "right in the middle of the road," turned its "head on its body toward the light and the car hit it about that time." The car swerved from side to side on the hard surface of the highway two or three times, and then went rather slowly off to the right at an angle, and went into the ditch.

Tindle testifies the calf ran to the left of the center of the road. As noted, the paved roadway was twenty-one feet wide, which left ten or ten and a half feet on the hard-

surface road within which to pass the calf on the right, remaining on the hard-surface road, and an additional ten or fifteen feet upon the ground surface of the roadbed in front of Tindle's store.

Defendant testifies he did not see the calf until it was right in front of the car. Dr. Green, on the rear seat, saw it before defendant, and just as it came on the edge of the pavement, and discovered it long enough to observe that the calf stopped and turned its head toward the lights of the car.

It may be reasonably inferred from the testimony of Dr. Green that the brakes were not applied until the calf was struck, and, indeed, we do not interpret defendant's testimony to the contrary. And from witness Atkins' evidence it may be inferred that the application of the brakes suddenly and with such violence as to lock the wheels was improper at such speed, causing the car to skid and swerve from side to side; and the evidence tends to show the car did so skid for a distance estimated from thirty feet to one hundred steps. The jury could, therefore, from the evidence reasonably infer that defendant, by keeping a proper lookout, could have discovered the calf earlier, and thus have avoided the accident, with ample space on the right and slowing down the car as he had done just one hundred yards back when he avoided the cow crossing the road.

The speed of the car was also a matter for their consideration. According to defendant he was driving forty-five miles per hour, and this was the limitation fixed by deceased. But Dr. Green's testimony is that the speed exceeded this, and was fifty or fifty-five miles an hour, though he understood deceased to fix fifty-five as the limit. But defendant knew deceased was unfamiliar with the operation of the car, and testifies he had never driven one. Numerous cows and sheep had been observed along the road. Deceased had warned defendant to be on the lookout for these animals. The limitation as to speed, therefore, is to be interpreted in connection with the caution as to a lookout for cows and sheep, which was meant of course to conserve the safety of the passengers. The jury could reasonably infer, therefore, that the speed limitation merely intended that in no event, and under no circumstances, was it to be exceeded, but not as an authority to equal such speed at the risk of safety and security. The driving of the car was left to defendant, deceased's chauffeur for eight years, and presumably expert in that line. The jury could reasonably infer that defendant had no authority to drive to the speed limit named by deceased if by so doing it endangered the safety of the passengers, and that in view of the numerous animals along the road, the warning given, and the experience just preceding the collision with the calf, defendant's speed was too great for safety under all the circumstances.

We recognize the doctrine applicable when one is confronted with a sudden emergency, calling for quick action, that he should not be held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation, and choose the best means of escaping peril or preventing injury. Byars v. Hollimon, supra.

The test, after all, is what care would an ordinarily prudent man have exercised under like circumstances. 45 Corpus Juris, 710; Selma St. & Sub. R. Co. v. Owen, 132 Ala. 420, 31 So. 598; Woodward Iron Co. v. Andrews, 114 Ala. 243, 21 So. 440; Central of Georgia Ry. Co. v. Foshee, 125 Ala. 199, 27 So. 1006; note, Southall v. Smith, 27 A. L. R. 1194, 1197; note, Allen v. Schultz, 6 A. L. R. 676, 680. And this is usually a question for the jury's determination. Birmingham Stove & Range Co. v. Vanderford, 217 Ala. 345, 116 So. 334; Alabama Co. v. Sanders, 202 Ala. 295, 80 So. 360; McQueen v. Jones, 226 Ala. 4, 145 So. 440; Reaves v. Maybank, 193 Ala. 614, 69 So. 137.

But it has been held that mere necessity for quick action does not constitute an emergency within this rule where the situation or the danger calling for such action is one which should reasonably have been anticipated, and which the person charged with negligence should have been prepared to meet. 45 Corpus Juris, 712.

The jury could reasonably infer, in the instant case, that with defendant's previous experience, his observation along the route, and the warning given by deceased, the presence of animals on the highway was reasonably to be anticipated, and which he should have been better prepared to meet.

Nor does the rule apply to one who wrongfully and voluntarily puts himself in such a dangerous position. Alabama Co. v. Sanders, supra; Birmingham Stove & Range Co. v. Vanderford, supra; 45 Corpus Juris, 966. Nor does the emergency relieve one from the obligation of exercising ordinary care, but is merely one of the circumstances which is proper for consideration in determining whether ordinary care has been exercised. 45 C. J. 711.

600

Plaintiff under the Florida statute derives such right of action as would have accrued to her husband had the accident not proved fatal. And the statement by deceased, answering a remark of Tindle a few minutes after the accident, and while suffering some pain, to the effect he placed no blame on defendant, who did all he could, was proper to be considered by the jury as an admission against interest, and was doubtless given due weight. But it is not to be held conclusive upon the question of civil liability.

Upon all the matters discussed, we conclude a jury question was presented and the affirmative charge requested by defendant was properly refused.

There was but slight conflict in the proof, and it does not appear to be seriously argued that the motion for a new trial should have been granted as against a preponderance of the evidence. As we understand defendant's argument on the motion, it is rested in the main upon the contention that the verdict was contrary to the instructions of the court as found in charges C, A, B, K, and H–1, given for defendant. The first three related to the matter of application of the brakes, and omitted any reference to their sudden application with such force as to lock the wheels, which Atkins' testimony tended to show was improper at that speed. Moreover, the verdict was not necessarily rested upon that ground of negligence, but may have been rested upon other grounds, as we have herein indicated. There could, therefore, be no basis for the contention the verdict was contrary to the court's instruction.

As to the two latter charges, our previous discussion of this question discloses that the jury could reasonably infer that in fact deceased gave no instruction for defendant to operate the car at the named speed, but merely fixed a maximum limitation thereon. We are unable to see, therefore, that the verdict was contrary to any of the written instructions, and the motion for new trial cannot be rested upon such theory.

We have considered and discussed the questions argued by appellant in brief, and the conclusion reached that no reversible error is made to appear. The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.