214 So.2d 436

Oliver Roscoe SWINDALL et al.

v.

Vinnie Jerkins SPEIGNER, Adm'x.

4 Div. 209.

Supreme Court of Alabama.

Sept. 5, 1968.

Rehearing Denied Oct. 10, 1968.

Wm. R. Martin and Chas. Woods, Ozark, Godbold, Hobbs & Copeland and Euel A. Screws, Jr., Montgomery, for appellee.

On Rehearing.

COLEMAN, Justice.

The application for rehearing is granted with respect to Assignment of Error No. 2. The opinion is modified in that the part which related to Assignment 2 is withdrawn, and this opinion is substituted for the original opinion. The opinion is extended to consider additional assignments of error which were not considered on original deliverance.

Defendants appeal from judgment for plaintiff in action for wrongful death of plaintiff's intestate in a motor vehicle collision on a highway.

Oliver Brantley, Troy, and Wm. B. Matthews, Ozark, for appellants.

About 7 a. m., during daylight on a clear, dry day, plaintiff's intestate was driving his pickup truck, traveling north, on U. S. 231 at a point near Chism's Truck Stop, which was on the west side of the highway. Defendant Swindall was riding in his automobile traveling south on the same highway meeting intestate's truck. Jimmy Rushing was driving Swindall's automobile. Rushing's administrator is the other defendant.

Plaintiff's intestate made a left turn to drive his truck into the truck stop and the vehicles collided. The investigating State Trooper testified that the width of the highway, where the accident occurred, was twenty-four feet, and that the point of impact was approximately at the center of the west, or southbound, lane about six feet from the extreme west edge of the highway. Both drivers were killed almost instantly.

Plaintiff states in brief that his theory is that wanton driving of Swindall's automobile was established by the circumstances of excessive speed of the automobile in an area congested by a busy business and intersection and dangerous topography such as a blind hill from the north.

Defendant's theory seems to be that the driver of Swindall's automobile was not guilty of either negligent or wanton conduct; that plaintiff's intestate, Jerkins, was guilty of negligence in the operation of his truck; and that Jerkins' own negligence was the proximate cause of his death.

### Assignment 10.

Defendants say the court erred in giving plaintiff's requested charge 9 which recites:

"Where the party killed was suddenly placed by the wrong of the defendant in a position of extreme and imminent peril, necessitating to his extrication, quick decision and action on his part, he will not be held to the same correctness of judgment and action as if he had time and opportunity to full(y) consider the situation and to choose the best means of escaping the peril."

By charge 9, plaintiff sought the benefit of the sudden emergency doctrine. In substance, that doctrine is that one who, without fault on his part, is suddenly and unexpectedly placed in a perilous situation, so as to be compelled to act instantly and without an opportunity for the exercise of deliberate judgment, is not chargeable with negligence if, in attempting to escape from the peril or to minimize the threatened injury, he acts as a person of reasonable prudence would or might have acted in the same or a similar situation. 80 A.L.R.2d 12.

The above stated rule has no application to, and cannot be invoked by, one who wrongfully and voluntarily puts himself in such a position of danger. Pittman v. Calhoun, 231 Ala. 460, 464, 165 So. 391. To like effect are McCauley v. Tennessee Coal, Iron & R. Co., 93 Ala. 356, 360, 9 So. 611; Birmingham Railway, Light & Power Co. v. Fox, 174 Ala. 657, 675, 56 So. 1013; Alabama Co. v. Sanders, 202 Ala. 295, 297, 80 So. 360; Birmingham Stove & Range Co. v. Vanderford, 217 Ala. 342, 345, 116 So. 334; Hill v. Almon, 224 Ala. 658, 660, 141 So. 625; Alaga Coach Line v. Foy, 227 Ala. 506, 510, 150 So. 493; Clark v. Farmer, 229 Ala. 596, 599, 159 So. 47; Pittman v. Calhoun, 233 Ala. 450, 452, 172 So. 263.

Defendants say charge 9 is bad because it assumes that the party killed was placed in peril "by the wrong of the defendant," and thus assumes the existence of a material fact as to which the evidence is in conflict. We do not agree. Charge 9, we think, is the statement of an abstract proposition of law and limits the application of the emergency doctrine to a situation "Where" the party was placed in peril "by the wrong of the defendant." In this respect, we understand the word "where" to have the same meaning as "if" or "when."

In Pittman v. Calhoun, 231 Ala. 460, 461, 165 So. 391, 392, this court held that charge 6 asserted a sound proposition of law. Charge 6 recited:

"'6. When a traveler, without any fault on his part, is placed in a position of

imminent peril, the law will not hold him guilty of such negligence as will defeat his recovery if he does not select the very wisest course, and an honest mistake of judgment in such a sudden emergency will not of itself constitute contributory negligence, although another course might have been better and safer.' "

In charge 6, it was assumed that the traveler was placed in peril "without any fault on his part." In *Pittman,* however, the evidence was in conflict as to whether the plaintiff was placed in a position of peril by his own actions or by the fault of defendant.

We are of opinion that the instant charge 9 is not bad for assuming as true a disputed fact.

Defendants say charge 9 is bad, for a second reason, to wit, because the charge omits to state that plaintiff is not entitled to the benefit of the sudden emergency doctrine if plaintiff, by his own acts, produced the sudden peril.

Charge 9 could have been refused without error for the reason that the charge pretermits freedom from fault in bringing about the sudden peril. See holding as to charge 11 in Alaga Coach Line v. Foy, supra.

This omission, however, did not make giving charge 9 reversible error under the holding in Hill v. Almon, supra. There this court considered an oral charge, on the emergency doctrine, which omitted reference to whether plaintiff, by his acts, produced the sudden peril. This court said that, if the charge were defective for this omission, the defendant should have asked for charges instructing the jury that the plaintiff could not claim the benefit of the emergency doctrine if he, or his agent, brought about the emergency.

Assignment 10 does not show reversible error.

## Assignment 2.

On application for rehearing, plaintiff says we erred in holding that giving plain-

tiff's requested charge 1 was reversible error. Charge 1 recites:

"I charge you that under the law of Alabama Mr. Swindall is liable for the negligence of the driver where (1) the driver was operating the automobile with permission of Mr. Swindall, (2) Mr. Swindall was an occupant of the automobile at the time of the accident, and (3) Mr. Swindall had not abandoned his right to control the automobile or if he exercised or had a right to exercise any control over the driver or the operation of the car or if the ride was for his benefit or the mutual benefit of himself and the driver."

Defendants say charge 1 is bad for two reasons: (1) because the charge fails to limit Swindall's liability for the driver's negligence to his negligence which was the proximate cause of the injury complained of, and (2) the charge ignores the defense of contributory negligence

Plaintiff says that giving plaintiff's charge 1 was not reversible error because charge 1 is not an incorrect statement of the law, but, at its worst, is merely incomplete and misleading and could have been cured by an explanatory charge. Plaintiff says further that the court did give other charges which cured the omissions in charge 1 with respect to proximate cause and contributory negligence.

■ If plaintiff's charge 1 was illegal, not simply misleading, it should have been refused because no explanation or qualification of it could make it good. Mobile City Lines v. Holman, 273 Ala. 371, 373, 141 So.2d 180.

■ If, however, plaintiff's charge 1 was merely incomplete and, therefore, misleading, giving it was not reversible error. It is not necessarily reversible error to give ambiguous or misleading charges; proper explanatory instructions should be given at the request of the party supposing himself prejudiced thereby. Birmingham So. R. Co. v. Harrison, 203 Ala. 284, 291, 82 So. 534,

541; First National Bank of Mobile v. Ambrose, 270 Ala. 371, 374, 119 So.2d 18, 21.

On original deliverance, we held plaintiff's charge 1 to be an incorrect statement of the law and not merely incomplete and misleading. On further consideration, we think that our holding on original deliverance is in conflict with Southern Ry. Co. v. Smith, 221 Ala. 273, 128 So. 228; McGough Bakeries Corp. v. Reynolds, 250 Ala. 592, 35 So.2d 332; and Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228. The three cases last cited were not called to our attention on original consideration of this appeal.

In Southern Ry. Co. v. Smith, supra, defendant excepted to certain portions of the court's oral charge. On the appeal, appellant assembled three exceptions as one paragraph and gave that paragraph the number 16. The third exception in number 16 recites:

> " '. . . A defendant would be held liliable for the torts or wrongs done by its agent, servant or employee if at the time the tort or wrong was done the agent, servant or employee was acting in the line and scope of his employment as such agent, servant or employee.' "

Another exception to the oral charge was numbered 19. It recites:

> "19. 'A defendant would be held liable for the torts or wrongs done by its agent, servant or employee if at the time the tort or wrong was done the agent, servant or employee was acting within the line and scope of his employment as such agent, servant or employee.' "

Neither number 16 nor number 19 contains any reference to proximate cause. With respect to these exceptions, this court said:

> ". . . There is no misstatement of law in any of them. The particular objection is that no reference is made to the requirement that the engineer must have knowledge or be negligent in not knowing of the dangerous position of appellee. The charges do not, any of them, predicate a right to recover in this case on any state of facts hypothesized. The several excerpts but relate to some of the essential features of the federal act. That act gives a cause of action for injuries resulting from negligence of any officer, agent, or employee of an interstate railroad carrier under the conditions named. The excerpts do not undertake to set up all the conditions which justify recovery. The first, No. 17, requires reasonable care to avoid injuring persons working on trains. This is certainly true, and the reasonable care may relate to an absence of knowledge of the dangerous position of such persons. The second, No. 18, merely, in most general terms, refers to the liability act, without undertaking to particularize any of its features. The third, No. 19, is but the statement of an elementary principle which applied to most every tort action, where the wrong is committed by an agent of defendant. Each contains no misstatement of law."

In *McGough Bakeries*, supra, the plaintiff sued for the death of his minor son, allegedly caused by the negligence of defendant, James Hamilton, while driving a truck owned by the other defendant, McGough Bakeries. The trial court, at request of plaintiff, gave the following written charges, to-wit:

> ". . . 'C. If you believe the evidence in this case James Hamilton was the servant or employee of McGough Bakeries Corporation and was acting in the line and scope of his employment in driving its truck on the occasion complained of, and McGough Bakeries Corporation is responsible and liable for any negligent act committed by James Hamilton on the occasion complained of.'

> .     .     .     .     .     .

> ". . . 'B. The Court charges the jury that if you believe the evidence in

this case the defendant, McGough Bakeries Corporation, is *liable* for any negligent act of the defendant, James Hamilton, on the occasion complained of.'" (Emphasis supplied.)

This court considered the omission from Charges B and C of any reference to proximate cause and said:

"But said charges should have been refused. Although they do not instruct a finding for plaintiff, they are both incomplete and as given could mislead the jury to the conclusion that, since Hamilton at the time of the accident was acting within the line and scope of his authority as agent of the defendant, McGough Bakeries Corporation, the plaintiff was entitled to recover a verdict against the said corporation defendant, because of the negligence of Hamilton, irrespective of whether any such negligence was the proximate cause of the injury which resulted in the death of plaintiff's son.

"We do not think, however, that this cause should be reversed because said Charges B and C were given. It is evident that the trial court immediately after reading Charge B to the jury (the last of the two charges given) recognized that the charges were incomplete. He thereupon orally instructed the jury as shown above that 'no person is responsible for any negligence unless that negligence is the proximate cause of the injury or damage. That applies throughout the charge to anything I say.'"

In Alabama Power Co. v. Smith, supra, defendant argued, as here, that plaintiff's requested charges 12 and 13 were bad because they omit any mention of proximate causation and instruct that the master is answerable for all negligent acts of the servant, whether such acts be the proximate cause of injury or not. Charges 12 and 13 recite:

"'No. 12.

"'I charge you, *gentlemen* of the jury, that the employer is responsible for

negligent acts or *omissions* of his employee *is* the course of his employment, and if you find from the evidence that John Smedley was an employee of C. Pierson Cosby while operating the crane at Hudson High School at the time Earl Smith was killed and that his operation of said crane was in the line and scope of his employment with C. Pierson Cosby, then C. Pierson Cosby would be responsible for any negligent acts or negligent ommissions of John Smedley in the operation of said crane.'

"'No. 13.

"'I charge you that the employer is liable for the negligence of his employees' acts within the line and scope of his employment, though not done under the employer's direction.'"

We held that the charges were ambiguous or misleading and that the omission of mention of proximate cause did not make the charges illegal or incorrect statements of the law; and, further, that the omission was cured by additional charges which the court gave at request of the defendants.

On the authority of the three cases last cited, we hold that plaintiff's charge, in the instant case, is not an incorrect statement of the law but is incomplete and misleading for omission of proper mention of proximate cause. It follows that giving charge 1 was not reversible error on the ground that proper mention of proximate cause is omitted.

We come to defendants' argument that charge 1 is bad for the reason that the charge ignores the defense of contributory negligence of the plaintiff's intestate.

In Moore v. Cruit, 238 Ala. 414, 191 So. 252, the court gave plaintiff's requested charge 10 which recites:

"'10. The Court charges the jury that if you are reasonably satisfied from the evidence that plaintiff's injuries were the proximate result of the concurring neg-

ligence of the driver of the defendant's school bus and of the driver of the automobile in which plaintiff was riding as a guest, then your verdict should be for the plaintiff.' "

In the summary of appellant's argument in 238 Ala., at page 418, 191 So. 252, the following appears:

" . . . Charge 10 given for plaintiff was bad. The alleged concurring negligence must exclude all fault on the part of plaintiff. . . . "

In rejecting this argument, the court said:

"The court in the oral charge gave the definition of proximate cause, and if plaintiff's given charge 10 was faulty for failure to exclude any negligence on plaintiff's part, we think the omission here is misleading only,—a matter readily remedied by explanatory charge requested by defendant. Alabama Power Co. v. McIntosh, 219 Ala. 546, 122 So. 677."

In First National Bank of Mobile v. Ambrose, 270 Ala. 371, 119 So.2d 18, the trial court gave plaintiff's requested charge 4 which recites:

" '4. I charge you gentlemen of the Jury, that an occupier of business premises is required to exercise reasonable care before its invitee comes to its premises and to have premises reasonably free from danger to the invitee when he arrives, and to so keep the premises reasonably safe, where the invitee might be expected or invited to go.' "

This court held that giving charge 4 was not reversible error for failure to instruct on contributory negligence, saying:

"While charge 4 might have gone further and defined an invitee's duty to exercise reasonable care for his own safety, the failure to do so does not render it defective. If the charge was thought to be misleading or not a full statement of the law the remedy was to request an explanatory or additional charge. Also,

had defendant desired that the jury be instructed on the issue of plaintiff's contributory negligence the proper course to that end was by requested charge."

On authority of the two cases last cited, we hold that plaintiff's given charge 1 in the instant case was not an incorrect statement of the law for failure to instruct on contributory negligence.

In answer to plaintiff's argument on rehearing, defendants argue that charge 13 in Alabama Power Co. v. Smith, supra, is abstract, and, therefore, the omission of mention of proximate causation did not make the charge an incorrect statement of law, but merely made the charge incomplete and curable by an explanatory charge; whereas plaintiff's charge 1 in the case at bar is not abstract and instructs the jury that defendant Swindall is "liable" for negligence of the driver. Defendants point out that charge 12 in Alabama Power Co. v. Smith, supra, is not abstract but, defendants say, charge 12 in *Smith* uses the word "responsible" instead of "liable". Therefore, defendants argue, charge 12 is not infected with the vice which comes from the word "liable" used in plaintiff's charge 1 in the case at bar. We do not think the difference which defendants point out between abstract charges and charges not abstract is a real, substantial distinction which makes the omission of proximate cause in an absract charge curable by explanatory charge, but not curable in a charge which is not abstract. Neither do we think that the difference between the word "liable" and the word "responsible" is such as to make one charge an incorrect statement of law and the other merely incomplete. Charge B in *McGough,* supra, uses the word "liable" and is not abstract.

Defendants cite four cases to support their contention that giving plaintiff's charge 1 in the instant case is reversible error.

Defendants cite Wilkey v. Aetna Life Ins. Co., 269 Ala. 308, 112 So.2d 458,

which was an action to recover disability payments under an insurance policy. This court reversed for error in giving defendant's requested charges which were incorrect statements of applicable law. The charges had no relation to the liability of a master for the negligence of his agent or servant, and the case is of no help in deciding whether plaintiff's instant charge 1 is incorrect or merely incomplete. *Wilkey* does hold that giving correct oral charges did not cure the error of giving incorrect written charges, the reason being that there is no way of knowing which of the contradictory charges the jury followed. Defendants cite *Wilkey* in support of this last proposition. Russell v. Thomas, 278 Ala. 400, 178 So.2d 556, is also cited by defendants for the same reason.

Defendants cite Mobile City Lines v. Proctor; 272 Ala. 217, 130 So.2d 388, where in considering Assignment 4 we held it reversible error to give plaintiff's requested Charge 6 which recites:

" '6. The court charges the jury that actionable negligence consists in the neglect of the use of ordinary care and skill toward a person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect plaintiff has suffered injury to his person.' "

We held Charge 6 bad for failure to limit actionable negligence to that neglect which proximately causes injury to plaintiff. It is well understood that negligence is not actionable unless it proximately causes injury. In giving Charge 6, the court was instructing the jury as to what constituted actionable negligence. Such a definition is not correct where an essential element, proximate cause, is omitted. Plaintiff's instant charge 1 does not undertake to define actionable negligence but is a statement of circumstances in which the owner of an automobile, riding in it, is liable for the negligence of his agent who is the driver. *Proctor* holds that omission of proximate cause makes a charge stating the definition

of actionable negligence an incorrect statement of the law. Southern Ry. Co. v. Smith, supra; McGough Bakeries Corp. v. Reynolds, supra; and Alabama Power Co. v. Smith, supra, hold that omission of proximate cause makes a charge stating that, under certain circumstances, the master is liable for the negligence of his agent, merely incomplete and misleading. We are of opinion that the distinction we have undertaken to point out is a valid one, and we are not persuaded that we should depart from these decisions.

In Mobile City Lines, Inc. v. Holman, 273 Ala. 371, 141 So.2d 180, this court reversed for giving plaintiff's requested charge which recites:

" 'The Court charges the Jury that if you are reasonably satisfied from the evidence that the Defendant corporation was guilty of negligence in and about the operation of the bus on which the Plaintiff was a passenger, the plaintiff is entitled to recover.' "

This court held the charge prejudicially erroneous in omitting that the alleged negligence must be the proximate cause of the injury. Here again, the charge does not state the circumstances in which the master is liable for the negligence of his servant, but merely declares that, if defendant was guilty of negligence in operating the vehicle, the passenger is entitled to recover. We think the charge distinguishable from plaintiffs charge 1 in the instant case.

After considering the additional cases cited by the parties in briefs on rehearing, we have concluded that giving plaintiff's charge 1 was not reversible error.

*Assignment 23.*

Defendants say the court erred in overruling their objection to a question propounded by plaintiff to his witness Coppage.

On direct examination, defendants' witness, Blackmon, had testified that he had been riding to work in a car pool with

defendants and one other; that on the day of the collision, Blackmon drove his own car because he was going to get off from work early; that he saw Swindall and Rushing at Mitchell's grocery on that morning; that they were getting gas; that they left Mitchell's first and Blackmon left right behind them as soon as he paid for cigarettes and finished a coca cola; that he did not see the accident but arrived there about a quarter or ten minutes to 7:00; that he drives between fifty and sixty and tries to average sixty; and that he was the first car to get to the wreck.

On direct examination, defendant Swindall testified that he and Rushing left Swindall's home, in his automobile "around 6:00 o'clock" in the morning; that they made one stop at Mitchell's to get gas; that, on reaching Chism's, they were traveling around fifty-five and sixty miles an hour; that he was due at work at 7:30; and that the accident happened at about a quarter or ten to 7:00.

On cross-examination of defendant Swindall, plaintiff asked Swindall how fast he was going at a place on the highway about a mile or mile and a half before he got to Chism's truck stop, at a little dip in the road with a creek and bridge across there. Swindall replied that he was going slower at the time of the accident than at the little dip in the road; that at the little dip he was going fifty-five, fifty-seven, fifty-eight miles an hour, give or take a mile or two or three miles either way; and that he was going about fifty-five miles an hour at the time of the accident. Swindall testified further that his speed remained continuously about the same, give or take a few miles.

On rebuttal, plaintiff placed his witness, Coppage, on the stand. On direct examination, Coppage testified that, on the morning of the accident, he was on the highway north of Chism's; that he was driving an egg truck going south; that he saw Rushing who was traveling south; that Rushing passed the witness about a mile, or maybe less, from the accident; that Rushing was driving an automobile; and that Coppage was traveling about fifty-five or sixty when he was passed.

Plaintiff then asked Coppage the following question:

"And what is your estimate of the— of Mr. Rushing's speed?"

Defendants objected. As we understand the record, defendants stated the ground of objection to be that the evidence called for by the question is not admissible because it is too remote. The court overruled and Coppage answered:

"I estimate between seventy and eighty."

■ Defendants now urge that their objection should have been sustained because the question called for evidence to impeach the witness Swindall on an immaterial matter, but, this latter ground is not available to defendants on appeal because they stated one ground on the trial and did not then state the ground that the evidence called for would impeach on an immaterial matter. T. R. Miller Mill Co. v. Ralls, 280 Ala. 253, 192 So.2d 706, Error 4.

■ As to the ground stated in the trial court; that is, that the evidence of speed at a prior place was too remote; in view of all the circumstances of this case, we are of opinion that the court did not abuse its discretion in admitting evidence of defendant's speed at the place a mile or mile and a half before the accident.

■ The admissibility of evidence regarding the speed of a motor vehicle on a highway before reaching the scene of the accident depends upon the facts of each case and must be left to the sound discretion of the trial court. Utility Trailer Works v. Phillips, 249 Ala. 61, 66, 29 So.2d 289. See annotation, 46 A.L.R.2d 9.

Assignment 23 does not show error.

*Assignment 24.*

■ Defendant Swindall separately assigns as error the overruling of his demurrer to Count I–A which recites:

"Plaintiff, Vinnie Jerkins Speigner, who sues as administrator of the estate of Carl Jerkins, Deceased, claims of the defendants the sum of $100,000 as damages for that heretofore on, to-wit, the 24th day of December, 1959, plaintiff's intestate was operating a motor vehicle along U. S. Highway 231 a public highway in Dale County, Alabama, at a point thereon, to-wit, four miles north of the center of Ozark, Alabama. Plaintiff avers that at said time and place Jimmy W. Rushing, deceased, the intestate of the defendant, J. Hoyt Searcy, as administrator of the estate of Jimmy W. Rushing, dec(e)ased, was operating a motor vehicle along said highway. Plaintiff further avers that at said time and place the defendant, Oliver Roscoe Swindall was the owner of the automobile being operated by the said Jimmy W. Rushing and was a passenger therein, and had the right to control the operation of the said automobile by the said Jimmy W. Rushing and that at said time and place said automobile was being operated for the benefit of the said Oliver Roscoe Swindall or for the mutual benefit of the said Oliver Roscoe Swindall and the said Jimmy W. Rushing.

"At said time and place the said Jimmy W. Rushing so negligently operated the motor vehicle of the defendant, Oliver Roscoe Swindall as to run into, upon or against, the motor vehicle being operated by plaintiff's intestate and thereby and as a proximate result and consequence thereof Plaintiff's intestate sustained injuries from which he died on, to-wit, December 24, 1959."

In brief, counsel for Swindall say it is not sufficient against Swindall to allege that Rushing negligently operated an automobile belonging to Swindall and as a proximate result of Rushing's negligence plaintiff was injured.

Counsel's statement is probably correct. There is in Count I–A, however, more than the bare allegation that Rushing was operating Swindall's automobile. Plaintiff alleges also that Swindall was a passenger in the automobile and had the right to control its operation, and that the automobile was then being operated for the benefit of Swindall or for the mutual benefit of Swindall and Rushing.

This court has said where a permissive user (owner also) occupies a car at time of collision, she (he) is liable for negligence of the driver if (1) she has not abandoned her right to control the car, or (2) if she exercises or has a right to exercise any control over the driver or the operation of the car, or (3) if the ride is for her benefit or for the mutual benefit of herself and the driver. Woodson v. Hare, 244 Ala. 301, 304, 13 So.2d 172. See also: Downes v. Norrell, 261 Ala. 430, 74 So.2d 593; Glass v. Davison, 276 Ala. 328, 161 So.2d 811; Towry v. Moore, 281 Ala. 644, 206 So.2d 889.

In Count I–A, plaintiff alleges that Swindall occupied the car, *and* had the right to control the operation by the driver, Rushing, *and* the car was being operated for Swindall's benefit or the mutual benefit of Swindall and Rushing. These, we think, are not allegations of facts which merely prima facie or presumptively establish the ultimate facts. These are allegations of the ultimate facts themselves and satisfy the rule stated in Sims v. Tigrett, 229 Ala. 486, 489, 158 So. 326. The allegations are that two of the factual situations, which make the owner liable as stated in Woodson v. Hare, supra, existed. If both conditions existed, then Swindall was liable for Rushing's actionable negligence and facts showing Swindall's liability were sufficiently alleged.

Count I–A is not subject to the objection here urged against it.

*Assignment 20.*

The court's refusal to give defendants' requested affirmative charge to the wanton count is assigned as error.

Defendants say that the evidence shows that defendants were traveling at a speed between fifty-five and sixty miles an hour in a sixty mile an hour zone when plaintiff's intestate made a left turn into the side of defendants' car; that defendants' car skidded ninety-eight feet prior to impact; that no tire or brake marks were left by the truck; and that the evidence is undisputed that plaintiff's intestate simply continued his left turn until the impact.

Defendants say the evidence that they were driving between fifty-five and sixty miles an hour is uncontradicted because Coppage's testimony as to defendants' speed at a point a mile and a half from the point of impact is not evidence that they were traveling at the same speed at the point of impact. Defendants say further that speed alone does not import wantonness, citing Mink v. Brown, 276 Ala. 3, 158 So.2d 647, and other cases.

It appears that Chism's Truck Stop is on a sort of plateau, that the highway proceeds up to this plateau from both north and south; that north of the scene of the accident, the crest of the hill is approximately 500 feet; that in coming from the north, as defendants' car did, the driver of a car could see between 400 and 600 feet from the crest of the hill to the point of impact. A dirt road intersects the highway in the area of Chism's. In the judgment of State Trooper Snellgrove, there were "Cross Road" or "Slow" signs on the highway "prior to this intersection." There was no curbing on the west side of the road in the area of the truck stop. There were 98 feet of brake marks made by defendants' car leading to the point of impact. "They were complete brake marks beginning dimly and continuing on in a darker color." Part of the time you could see four, part of the time three, "he was skidding sideways part of the time."

Officer Snellgrove testified:

"Q. Mr. Snellgrove, will you describe the activities of the highway and the area in and around Chism's Truck Stop, with reference to . . . whether or not this is a busy place or whether infrequently visited?

"A. It was a busy place there; there was a lot of traffic in and out.

"Q. A lot of traffic and congestion in about this Chism's Truck Stop?

"A. Yes.

"Q. And there was so at the time of the accident?

"A. Yes, sir. it was."

The Reverend A. C. Phillips testified that he was traveling north behind plaintiff's intestate's truck; that intestate slowed down and gave a turn signal by extending his left arm. This witness testified:

"Q. I believe you testified that he had his arm out?

"A. Arm out, yes, sir. He had had it out oh, about half way up to a gradual slope there, you see.

"Q. Did you actually see the car that hit this truck before the actual impact?

"A. No. It was such that the truck blinded my vision. The only thing I was looking at was the truck, and I could not see the car.

"Q. What was the first thing that called your attention to the fact that there was an impact?

"A. Two of them in the air and two bodies flying out.

"Q. Two of them in the air?

"A. Yes sir. The truck went up in the air at the moment of impact, and the car, the first time I saw the car

was when it was wheeling in the air, was turning, and the truck was turning to the right. The body of the truck driver went out the right hand door, and I saw the body of a man in the car coming out of the car at about the same time.

"Q. Was the impact such that the inertia caused the driver of the truck to go forward?

"A. Well, I don't . . the only thing I can remember is his body coming out the right hand door.

"Q. His body coming out the right hand door?

"A. Yes.

"Q. I believe you testified that both vehicles were in the air?

"A. In the air when I saw them.

"Q. How high off the pavement?

"A. Well, it . . I would say three feet."

The point of impact was on the west side of the highway, approximately the center of the west lane, about six feet from the extreme west edge of the highway. Defendants' car came to rest 66 feet from the point of impact in the same general direction in which it was traveling. The truck came to rest at a point 41 feet in the same direction.

 Considering the 98 feet of skid marks and the testimony that both vehicles were lifted three feet off the ground by the impact, and that they moved the distances shown in direction of defendants' travel before coming to rest, we do not think the jury was limited to a finding that defendants' speed was not faster than between fifty-five and sixty miles per hour. Considering the testimony as to traffic and the "Slow" sign, we think that the jury could find for plaintiff on the wanton count.

### Assignment 19.

Defendants assign as error refusal of their requested affirmative charge as to the negligence count. Defendants say that they were entitled to this charge because the uncontradicted evidence shows that plaintiff's intestate was guilty of contributory negligence. We are of opinion that a jury question was presented on this issue.

### Assignment 1.

Defendants say they were entitled to a favorable ruling on motion for new trial because the verdict is contrary to the great preponderance of the evidence. Without further discussion of the evidence, we are of opinion that the stated ground of the motion was overruled without error.

Rehearing granted.

Opinion modified and extended.

Affirmed.

All the Justices concur except SIMPSON, J., not sitting.