138 So. 279

## GARING v. BOYNTON et al.

### 7 Div. 987.

Supreme Court of Alabama.

Nov. 5, 1931.

Rehearing Denied Dec. 17, 1931.

Erle Pettus, of Birmingham, for appellant.

Knox, Dixon, Sims & Dixon, of Talladega, for appellees.

**BROWN, J.**

■ This is an action on the case to recover damages for personal injuries. The complaint on which the case was tried consists of counts 2, 3, 5, and 6. Counts 2, 5, and 6, ascribe the plaintiff's injuries to the negligence of defendants in maintaining an elevator in their store in Talladega, Ala., and count 3 alleges that plaintiff's said "wounds, injuries or damages were the proximate consequence and caused by the wantonness and wilfullness of the defendants' servants or agents while acting within the line or scope of their employment."

The defendants' pleas of contributory negligence, numbered 4 and 5, were interposed to counts 2, 5, and 6 only, and appellant's contention that these pleas were applied to the third count and therefore the demurrers thereto were erroneously overruled, is not sustained by the record. These pleas fall within the class where the facts and conduct alleged as constituting contributory negligence do not as a matter of law constitute contributory negligence, but are sufficient to justify an inference of fact that plaintiff's conduct was negligence, and the pleas so characterize it and allege that this negligence proximately contributed to plaintiff's injury and damage. This met the requirements of the rule which was clearly restated in B., R. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, 82, Ann. Cas. 1916A, 543, and reaffirmed in the following cases: Smith v. Louisville & N. R. Co., 219 Ala. 676, 123 So. 57; Mobile Light & R. R. Co. v. Forcheimer, 221 Ala. 139, 127 So. 825. The pleas were not subject to any of the objections stated in the several grounds of demurrer, and therefore the demurrer was overruled without error. Code 1923, § 9479.

■ And, as observed in the Gonzalez Case, "in the latter case [that is, where the facts alleged do not constitute negligence as a matter of law], the facts being proved, negligence vel non is a question of inferential fact for the jury."

The plaintiff, as the evidence shows, at the time of his injuries, was a salesman for the defendants, who were engaged in operating a hardware store in Talladega, and was paid a commission on the goods sold by him. During all the working days of the week, except Saturday, he performed his work out of the store, but on Saturday he was required to work in the store.

The defendants maintained in their store, a freight elevator, which was located one hundred feet from the front of the store and about twenty feet from the rear; the store building being located in the block with buildings on both sides. The building was two or more stories in height, and the elevator served all of the floors, including the basement, and had an entrance from both the front and rear. On the several floors, not including the basement, the shaft of the elevator was protected by gates which, when the elevator floor was in line with the floor, remained opened, and, when the elevator lifted, the gates automatically closed by means of a latch or trigger which was caused to release by the passing elevator. Attached to the gates by cords which pass over pulleys are heavy weights to aid in lifting the gates and to prevent them falling with too much force when the latch or trigger is released by the passing elevator. Evidence was offered tending to show that by wear these cords would become frayed and this would cause the gates to sometimes hang and prevent them from closing automatically.

That the only natural light shed on the elevator was from the outside windows at the front and rear of the building, and some of this was cut off by shelving, counters, and articles of merchandise kept thereon, enveloping the elevator in semidarkness, of more or less degree, depending upon the condition

of the weather, and to aid this situation an electric light located from six to twelve feet from the elevator shaft was provided. This could be turned on and off by a pull cord. The floors were kept oiled with floor oil to allay the dust, and this caused them to turn dark, and the floor of the elevator had become dark by use.

The plaintiff's special line of work was selling and promoting the sale of electrical goods and apparatuses. The electric batteries kept for sale by defendants were located in the elevator shaft on shelves, as some of the evidence tended to show, from four to eight feet from the level of the first floor.

The plaintiff, while in the act of serving a customer, who desired to purchase an electrical battery, as his evidence tended to show, went to the elevator shaft where the batteries were kept, and, finding the gate open, attempted to step upon what he took to be the floor in the elevator, and at the same time taking hold of the gate which stood some six inches above his head, and the gate fell, precipitating him to the bottom of the elevator shaft about fourteen feet, landing on his feet, with the result that one of his legs was broken, the bones in his feet crushed, and suffered other injuries. This occurred on Saturday, and in the course of the performance of his duties under his contract with defendants.

The elevator had been in use nine years, and, as some of the evidence shows, the cords attached to the gates had been in need of repair or replacement. The elevator had been inspected some five or six times during its use by the representatives of the person or firm who installed it, and the employees of defendants kept the machinery or motor oiled and in running order.

The plaintiff on his direct examination testified as to the facts immediately attending his injury, "That was a panel gate, and when I went back there to get a battery they kept the batteries in the elevator shaft; you had to get on the elevator and go up about five or six feet to get to them. There were shelves in there built in the wall and the batteries were stored on those shelves. To get to the batteries you had to get in the elevator and pull it up above five or six feet till you could get to them. On this occasion I had a call for a battery—I was going to sell a battery. I went back and the gate was up and I caught hold of it like that (indicating) and made a step where the elevator is supposed to be there and the gate dropped and fell down and threw me down in there. The position that the gate was in at the time I made that step there, I could not see whether or not the elevator was there, it was dark back there. When that gate was [as] on that occasion the elevator was supposed to be in position where I would have stepped on it; when I

caught hold of the gate it dropped and I fell through the hole there and broke this leg (indicating). When I caught hold of the gate the gate was up, and when the gate was up the elevator was supposed to be there at that landing where I could step right on it. I took hold of the gate and when I stepped forward then I fell into the shaft. The elevator was not there at the time; it was on the second floor. If I looked real close in that dark place there I could have seen the elevator when I looked, but it was dark back there. I looked as I stepped and I thought the elevator was there, and I stepped in the shaft. The place from where I stepped off to the bottom was, I imagine, about fourteen feet. I landed right straight on my feet."

On cross-examination the plaintiff testified that he was familiar with the location of the elevator and knew of the location of the electric light; that the light was not on and he did not turn it on before attempting to step in the elevator, and "I wouldn't call it awfully dark back there, but it is pretty dark behind those counters. There is no way of lighting the rear end of the store except a small door. There are two doors back there but they are separated by a partition. I don't remember whether those doors were open or closed at that time. * * * I said I walked back there and the elevator looked like it was there and as I caught hold of the door to step in the gate fell and threw me in the elevator shaft. * * * There was not anything between me and the open elevator shaft. I do know as a matter of fact when there is no elevator in the elevator shaft the pit is dark, and it was dark on that occasion." .

The evidence was in conflict as to whether or not the location of the elevator and the light surrounding it were such as to require the use of the electric light in the daytime to make approach to it reasonably safe. One of defendants' witnesses testified that it was not and that ordinarily the electric light was not used for that purpose in the day time.

■ Defendants' counsel, on cross-examination of the plaintiff, asked him: "And if there had been a floor in the elevator shaft on a level with the floor of the store *the light would have been reflected on it, wouldn't it?*" (Italics supplied.) The plaintiff answered: "No sir, it was as dark as the other." Counsel for defendants then moved the court to exclude the answer, the court granted the motion, and to this action and ruling of the court plaintiff excepted. The answer was responsive to the question, was pertinent and material to the issue in the case, and the court erred in granting the motion to exclude. Louisville & Nashville R. R. Co. v. Blankenship, 199 Ala. 521, 74 So. 960.

It cannot be affirmed on this record that this ruling was error without injury, first, because this is the only direct evidence to the

effect that, if the elevator had been in place at the first floor, the light emanating from the outside would not have been reflected by the floor of the elevator so as to enable plaintiff to ascertain that the elevator was in its proper place at that floor, and defendants were allowed, over plaintiff's objection, to adduce evidence to the contrary; the witness Gowan Roberts testifying that "When the elevator is on the level, with the light coming through that window, as on that day, it is clearly apparent and manifest that it (the elevator) is there."

Another reason is, as appellees correctly contend, the record does not show but what the issues in the case were submitted to the jury, and we are not able to affirm that the evidence excluded would not have influenced their verdict. Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640.

In Stinson v. State (Ala. Sup.) 135 So. 571,[1] it was ruled, in line with previous decisions of this court, that special instructions not indorsed by the trial judge, as required by the statute, and not shown by the bill of exceptions to have been given or refused, cannot be considered on appeal.

Appellees further contend that the exclusion of said evidence was error without injury, for the reason that the defendant was entitled to the affirmative charge on the issue of contributory negligence. The evidence excluded was relevant to that issue, and moreover the judgment here is that the evidence presented a jury question. B., R. L. & P. Co. v. Gonzalez, supra; Farmers' & Merchants' Warehouse Co. v. Perry, 218 Ala. 223, 118 So. 406.

The case of F. W. Woolworth Co. v. Davis (C. C. A.) 41 F.(2d) 342, is not an apt authority here, for the reason that the rule followed by the federal court, as to the quantum of proof necessary to require the submission of cases to the jury, is different from the rule that obtains in this jurisdiction, except in cases where the state courts are required to apply the federal rule, and the court in that case applied the rule of the federal courts. See Illinois Central R. Co. v. Johnston, 205 Ala. 1, 87 So. 866; L. & N. R. Co. v. Hall, 223 Ala. 338, 135 So. 466.

The other questions argued have been considered, and we find nothing that requires treatment.

For the error pointed out, the judgment of the circuit court must be reversed.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.

---

[1] 223 Ala. 327.