4 So.2d 394

**GREEN v. CITY OF BIRMINGHAM et al.**

**6 Div. 893.**

Supreme Court of Alabama.

May 22, 1941.

Rehearing Denied Oct. 9, 1941.

Further Rehearing Denied Nov. 13, 1941.

Wm. Dowdell Denson, of Birmingham, for appellant.

686

Wm. L. Clark, of Birmingham, for appellees.

THOMAS, Justice.

The suit was against the city for wrongful death.

The court gave the affirmative charge for the defendant. This is the primary question for consideration under the rule that obtains. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

In City of Birmingham et al v. McKinnon, 200 Ala. 111, 75 So. 487 (a case of obstructions next to sidewalk), this court held that "generally, municipal corporations are not liable for police officers' negligence; but this rule does not apply where duty to remedy or report defects is imposed upon them, in respect to which they are mere ministerial agents, for whose acts the municipality is answerable in its corporate capacity."

In City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542, the suit was for extraneous substance on the sidewalk.

In City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23, 24, the injury was caused by negligence in the maintenance of the street and the court said: .

"Even where a police officer is charged with the duty to remedy defects or report same to some other officer, as to such service, he is deemed a ministerial agent, for whose negligence the municipality is answerable in its corporate capacity. City of Birmingham v. McKinnon, 200 Ala. 111, 75 So. 487; 19 R.C.L. §§ 391 and 392.

"There is no need now to re-examine the ground on which the liability is imposed, nor to differentiate the various cases of nonliability for official action. It is part of the jurisprudence of Alabama, long established, and now recognized by statute. . Code 1923, § 2029; Code 1907, § 1273."

The statute referred to (Code of 1923, § 2029, Code 1940, Tit. 37, § 502) and held a corporate matter rather than a public matter is: "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employe of the municipality engaged in work therefor; and while acting in the line of his duty, or unless the said injury or wrong was done or suffered through the neglect, carelessness, or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council, or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council, and whenever the city or town shall be made liable to an action for damages, by reason of the unauthorized or wrongful acts, or the negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."

See Brooks v. City of Birmingham, 239 Ala. 172, 194 So. 525 and Code of 1940, Title 37, § 502 and authorities.

■■ In Hillman v. City of Anniston, 214 Ala. 522, 108 So. 539, 46 A.L.R. 89, the suit was for street improvements, and in Robbins v. City of Sheffield, 237 Ala. 674, 188 So. 874, 875, touching the construction of an electric distribution system, the definitions of governmental and municipal functions are thus stated:

" 'Governmental functions' are those conferred or imposed upon a municipality as a local agency of limited jurisdiction, to be employed in administering affairs of the state, and promoting the public welfare generally.

"When properly applied to municipalities, the term 'governmental functions' should be limited to legal duties imposed by the state upon the municipality, which the municipality may not omit with impunity but must perform at its peril. * * *

" 'Municipal functions' are those granted for specific benefit and advantage of urban community embraced within a municipality's boundaries."

As we understand our cases police duties are held to be governmental. Hillman v. City of Anniston, 216 Ala. 661, 114 So. 55; City of Anniston v. Hillman, 220 Ala. 505, 126 So. 169.

■ Under the undisputed evidence in this case the tort was committed in the discharge of a governmental duty, act or function, and was not done in the neglect to discharge a ministerial duty of a city official. Densmore v. City of Birmingham, 223 Ala. 210, 135 So. 320.

It results from this holding that the affirmative charges requested in writing by the defendant were properly given.

The judgment of the circuit court is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.

On Rehearing.

THOMAS, Justice.

The view we entertain and announced in the original opinion (and from which we do not recede) renders unnecessary the consideration of the required notice to be given to subject the municipality to suit.

That question is not considered though urged by counsel.

Appellant's counsel say that "the record on this appeal shows the appeal is prosecuted, not only against the City of Birmingham, but also, against the two defendants, Coggins and Montgomery, * * *."

Assignments of error are that "The trial court erred in overruling plaintiff's motion for a new trial;" that the verdict of the jury is unsupported by the evidence and is contrary to the evidence in the case; that the overwhelming weight of evidence is contrary to the verdict of the jury; that the evidence is insufficient to support the verdict, and that the verdict of the jury is contrary to the law of the case.

■ It is declared by this court that a verdict should not be allowed as supporting the judgment if it is not warranted by the evidence under the rules that obtain when the preponderance of the evidence is decidedly against the verdict so as to invoke the conviction that it is wrong and unjust. Cudd v. Bentley, 204 Ala. 586, 87 So. 85; Louisville & N. R. Co., v. Rush, 208 Ala. 516, 94 So. 577.

In addition to the aforementioned grounds of the motion for rehearing, the question of the right of appellant to a reversal of the judgment of the trial court is presented, as to the individual defendants, independently of affirmance or reversal as to the City of Birmingham.

■ In Stapler v. Parler, 212 Ala. 644, 103 So. 573, a general rule of joint liability is thus stated: "The general rule is that all parties participating in a wrongful act, directly or indirectly, whether as principals or as agents, or both, are jointly and severally liable in damages for the wrong done, where injury results."

Charge No. 68f is in the following language: "The Court charges the jury that all parties participating in a wrongful act, directly or indirectly, whether as principals or as agents, or both are jointly and severally liable in damages for the wrong done where injury results."

■ The appellant says as to the refusal of this charge that "The defendant Montgomery and the defendant Coggins were both in charge of the death car and operating it while in joint control thereof in the performance of the duties of their employment, those duties being ident-

ical;" that there could not "* * * be * * * a stronger case establishing the right of the plaintiff to have this charge given to the jury in writing." We have indicated on the original hearing that the city at such time, place, agency and agents was engaged in the discharge of a governmental function and was, therefore, not liable for the damages sought, and hence there was no error in refusing that charge as to said defendants.

For the like reason, defendant's Charges L and M were properly refused as to the city. The instruction being, "must find for the plaintiff" applies to the city as well as the agents in charge of the car. It follows that there was no error in the refusal of Charge N, which is in the following language: "The Court charges the jury if they believe the evidence in this case they must find the defendant guilty of negligence."

In following, somewhat, the line of argument employed in appellant's brief, we now consider the insistence that the trial court erred in overruling plaintiff's demurrer to Plea 13. The plea is as follows: "Plaintiff's intestate was guilty of negligence on the occasion complained of which proximately contributed to his injuries and death in this: that he walked from behind a street car and from a point where his view was obstructed and from a point of safety into the path or portion of the street, upon which he was walking, which the deceased well knew was usually and rightfully used for automobile traffic and that on said occasion, notwithstanding the fact that he was coming from behind a street car and his view was obstructed that he walked immediately in front of and in such close proximity to the automobile referred to in the complaint, which was then and there rightfully traveling along said highway and being operated by the defendant Coggins, that said automobile could not stop or be stopped without striking the deceased and injuring him."

The plea of contributory negligence is sufficient against demurrer directed thereto. It alleges facts and conduct sufficient to justify an inference that the conduct of the plaintiff's intestate was negligence and the plea so characterizes it and alleges that this negligence proximately contributed to the injury and death. Garing v. Boynton, 224 Ala. 22, 138 So. 279; Birmingham Ry., L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas.1916A, 543; Preston v. LaSalle Apts., Inc., ante, p. 540, 3 So.2d 411; City of Birmingham v. Monette, ante, p. 109; 1 So.2d 1, 133 A.L.R. 1020.

In Garing v. Boynton et al., supra, it is said [224 Ala. 22, 138 So. 280]: "These pleas fall within the class where the facts and conduct alleged as constituting contributory negligence do not as a matter of law constitute contributory negligence, but are sufficient to justify an inference of fact that plaintiff's conduct was negligence, and the pleas so characterize it and allege that this negligence proximately contributed to plaintiff's injury and damage. This met the requirements of the rule which was clearly restated in Birmingham Ry., L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, 82, Ann.Cas.1916A, 543, and reaffirmed in the following cases: Smith v. Louisville & N. R. Co., 219 Ala. 676, 123 So. 57; Mobile Light & R. R. Co. v. Forcheimer, 221 Ala. 139, 127 So. 825. The pleas were not subject to any of the objections stated in the several grounds of demurrer, and therefore the demurrer was overruled without error. Code 1923, § 9479."

We come to a consideration of requested general affirmative instructions by defendants Coggins and Montgomery. Such instructions should not be given when the evidence is open to a reasonable inference of a material fact unfavorable to the party requesting such a charge. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135; Yates v. Barnett, 215 Ala. 554, 112 So. 122; Ward v. Limblad, 196 Ala. 146, 72 So. 80; Mobile & O. R. Co. v. Glover, 150 Ala. 386, 43 So. 719; Kansas City, M. & B. R. R. Co. v. Childers, 132 Ala. 611, 32 So. 717.

We advert to reproduce at this point the rule that obtains on the arising of a sudden emergency and the duty of action or nonaction resulting therefrom. It is stated in Central of Georgia Ry. Co. v. Foshee, 125 Ala. 199, 215, 27 So. 1006, 1011, as follows: "There is a doctrine, fully approved by this court, to the general effect that where the party injured was suddenly placed, by the wrong of the defendant, in a position of extreme and imminent peril, necessitating, to his extrication, quick decision and action on his part, he will not be held to the same correctness of judgment and action as if

he had time and opportunity to fully consider the situation, and to choose the best means of escaping the peril; or, in other words, adopting a formulation of this principle which has been approved by this court, where, by the negligence of the defendant, or those for whom he is responsible, the plaintiff has been suddenly placed in a position of extreme peril, and thereupon does an act which, under the circumstances known to him, he might reasonably think proper, but which those who have a knowledge of all the facts, and time to consider them, are able to see was not in fact the best, the defendant cannot insist that under the circumstances the plaintiff has been guilty of negligence. 'Perfect presence of mind, accurate judgment, and promptitude under all circumstances are not to be expected. You have no right to expect them to be something more than ordinary men.' [Woodward] Iron Co. v. Andrews, 114 Ala. 243, 257-259, 21 So. 440, 444. But this doctrine can have no application here. The intestate, when she started upon the act which cost her her life, was not in a position of peril, extreme or otherwise. She was, to the contrary, in an absolutely safe position. And not only was it safe in point of fact, but it was obviously so to the perceptions and comprehension of any ordinary man. * * *"

This last observation in the case of Central of Georgia Ry. Co. v. Foshee, supra, is applicable to the city's patrolmen driving the car. They were at the time and place acting within the line and scope of their employment or appointment as such police officers of the City of Birmingham and did, under the circumstance of sudden emergency, what a reasonable man would have done. Woodward Iron Co. v. Andrews, 114 Ala. 243, 259, 21 So. 440. This rule was also applied in Byars v. Hollimon, 228 Ala. 494, 153 So. 748; Birmingham Electric Co. v. Turner, ante, p. 66, 1 So.2d 299, to the action of a defendant. See case of The Bywell Castle, 4 Prov.Div. 219, 222.

The plaintiff-appellant argues that the driver of the police car was thus guilty of subsequent negligence. To answer this we think it only necessary to call attention to the testimony of Coggins, called as a witness for plaintiff, from which the jury was justified in finding that Coggins was not negligent on the occasion in question. He testified that he was driving at a speed of eight or ten miles per hour and that Mrs. Fabian stepped right "into the path of the automobile. I just cut the car to my right and put on the brakes and stopped, and as I did I struck Mr. Fabian with the right front fender near the hub, and he turned half around and broadside of this automobile. He fell on the pavement there." He further testified that the automobile was stopped within about two feet after he applied the brakes; that Mr. Fabian was in a place of safety and started back in the direction of the path of the automobile toward his wife just before the automobile came in contact with him, causing his fatal injuries. We reproduce Coggins' account of the sudden emergency as follows: "Immediately prior to the accident I was driving the automobile in a southerly direction on 27th Street in North Birmingham. The street car was stopped on the street car track there just South of 33rd Avenue. The people alighting from the street car got off on the opposite side of the street car from the side on which I was traveling. The north end of the street car at the time it was stopped, that was about where the sidewalk space was, or where the sidewalk would be if it was extended on across 27th Street. Mr. and Mrs. Fabian on this occasion did not come around the north end of the street car, or the front end of it, they did come around the back end of the street car; and I was proceeding along there on the right hand side of the street and on the opposite side of the street car from that on which a person would alight immediately before this collision occurred, running at a speed of approximately 8 or 10 miles per hour. The driveway on which I was driving at that time was paved. I saw Mr. Fabian first. He crossed over in front of the automobile, then I saw Mrs. Fabian coming from the rear of the street car from behind the street car. Mr. Fabian had walked across the street to over near the curb and I was driving along between the street car and Mr. Fabian, and as I came up to the rear, which is the South end of the street car, Mrs. Fabian stepped right up into the path of the automobile. I just cut the car to my right and put on the brakes and stopped, and as I did I struck Mr. Fabian with the right front fender near the hub, and he turned half around and fell broadside of this automobile. He fell on the pavement there. Mr. Fabian

changed his position apparently to go back to Mrs. Fabian. The automobile struck him right about the front end. I don't say right at the point or right at the side, but it was right at the right front fender, it struck him somewhere near the hub. He had turned or was in the act of stepping towards the automobile at the time he was struck. After Mr. Fabian was injured, I got out of the car. Mr. Montgomery and I. Mr. Montgomery is not employed by the City at this time. I don't know where Montgomery is. I got out there to assist Mr. Fabian immediately after the accident occurred. An ambulance was called, and he· was sent to the hospital. I stayed there with him until the ambulance came. I have never been employed in the street department of the City of Birmingham."

This case finds analogy in The Bywell Castle, 4 Prob.Div. 219, 223, 226, 228, where James, L. J., said: "But I desire to add my opinion that a ship has no right, by its own misconduct, to put another ship into a situation of extreme peril, and then charge that other ship with misconduct. My opinion is that, if, in that moment of extreme peril and difficulty, such other ship happens to do something wrong, so as to be a contributory to the mischief, that would not render her liable for the damage, inasmuch as perfect presence of mind, accurate judgment, and promptitude under all circumstances are not to be expected. You *have no right to expect men to be something more than ordinary men. * * *."* [Italics supplied.]

The subject was further discussed and the rule announced by Brett, L. J., in the same case: "The next question is whether the Bywell Castle, being put into that difficulty did what was wrong. It is said *that she did so in two instances. But what is the wrong that the Court is bound to find she did?* Not merely that she did a wrong thing, but that she was guilty of a want of that care or skill which she ought to have shewn under such difficult circumstances. I am clearly of opinion that when one ship, by her wrongful act, suddenly puts another ship into a position of difficulty of this kind, we cannot expect the same amount of skill as we should under other circumstances. The captains of ships are bound to shew such skill as persons of their position with ordinary nerve ought to shew under the circum-

stances. But any Court ought to make the very greatest allowance for a captain or pilot suddenly put into such difficult circumstances; and the Court ought not, in fairness and justice to him, to require perfect nerve and presence of mind enabling him to do the best thing possible. * * *."

And the concurrence by Cotton, L. J., was in the following words: "Even if the collision had not been unavoidable at the time when the helm of the Bywell Castle was put hard a-port, I should not have held that vessel liable. For in my opinion the sound rule is, that a man in charge of a vessel is not to be held guilty of negligence, or as contributing to an accident, if in a sudden emergency caused by the default or negligence of another vessel, he does something which he might under the circumstances as known to him reasonably think proper; although those before whom the case comes for adjudication are, with a knowledge of all the facts, and with time to consider them, able to see that the course which he adopted was not in fact the best. In this case, though to put the helm of the Bywell Castle hard a-port was not in fact the best thing to be done. I cannot hold that to do so was under the circumstances an act of negligence on the part of those who had charge of that vessel."

The action in the above case was brought by the London Steam Ship Company, the owners of the Princess Alice against the owner of the Bywell Castle, and there was a counter claim by the owner of the Bywell Castle. Thus the doctrine of "sudden emergency" was applied to the action of the defendant in that case.

The rule that obtains is that the standard by which to measure the legal propriety or freedom from culpability of the conduct of a person subjected to an emergency is the same in all cases, and is the care which a reasonably prudent person likewise circumstanced or advised would have observed or taken. Ex parte Alabama G. S. R. Co., 204 Ala. 504, 86 So. 100; Faulkner v. Gilchrist, 225 Ala. 391, 143 So. 803. Such is the general rule. 45 Corpus Juris p. 713, §§ 95 and 96.

The evidence has been re-examined. The city and its agent Coggins, in charge of the car, were engaged in a governmental function and agency at the time of the injury. Did the policeman driv-

ing the automobile in doing police duty for the city, do more or less than a reasonable man would have done when the sudden emergency arose, as he approached the street car having discharged or discharging passengers?

■ As the case may be, the material facts, composing the sudden emergency, were the moving or not moving of the street car combined with the actions of Fabian and his wife having alighted therefrom and approaching the sidewalk. It was their going by the front of the car, or around the back of the car in front of the approaching automobile. Coggins testified that Fabian had proceeded to the east side of the street to a point of safety when his wife suddenly came around the car in the way of the approaching automobile. This peril of the wife was perceived by her husband, who was then at a point of safety. He suddenly attempted to go to her assistance and thus placed himself in the way of the police car. Its driver, in trying to avoid collision with Mrs. Fabian, turned to the right and struck Mr. Fabian. From these facts arose questions for the jury as to Coggins. Republic Iron & Steel Co. v. Fuller, 6 Ala.App. 448, 60 So. 475; McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Jones v. Bell, 201 Ala. 336, 77 So. 998.

When the whole record is examined, the trial court committed no error in giving the general affirmative instruction requested for the city and for Montgomery. At most a question of negligence vel non was presented to the jury as to defendant Coggins. The court refused defendants' Charge 2 in the following words: "If you believe the evidence in this case you cannot return a verdict against the defendant, Coggins."

The verdict of the jury was: "We the jury find for the defendants.".

The motion for a new trial was overruled and in this ruling of the trial court we find no reversible error.

It results that the judgment of the circuit court is free from error and is affirmed, as heretofore announced, and the application for rehearing overruled.

Affirmed; application for rehearing overruled.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.